**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FIRST CHOICE FEDERAL CREDIT UNION, on behalf of itself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) | Docket No. 2:16-cv-00506-NBF-MPK |
| v. | ) ) | |
| THE WENDY'S COMPANY, WENDY'S RESTAURANTS, LLC, and WENDY'S INTERNATIONAL, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## WENDY'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE APPLICATION OF OHIO LAW

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     STANDARD OF REVIEW .......................................................................... 2

III.    BACKGROUND ........................................................................................... 3

        A.      Overview ............................................................................................ 3

        B.      Wendy's Relationship with Its Franchisees ...................................... 6

                1.      Franchisees Using the Wand POS System............................. 7

                2.      Franchisees Using NCR's Aloha POS System ...................... 8

        C.      Plaintiffs .......................................................................................... 10

IV.     ARGUMENT AND CITATION TO AUTHORITIES.................................. 12

        A.      Global Application of Ohio Law Violates Due Process. ................. 12

                1.      Material Conflicts Exist With Respect To Each Plaintiff's Claims.......... 14

                        a.      Negligence ................................................................ 14

                        b.      Negligence Per Se ..................................................... 16

                        c.      ODTPA ...................................................................... 16

                2.      Significant Contacts ............................................................ 17

                        a.      The Data Breach Has Virtually No Connection To Ohio. ............ 18

                        b.      Plaintiffs' Damages Have No Connection To Ohio. .................... 20

        B.      Pennsylvania's Choice of Law Analysis......................................... 22

                1.      Plaintiffs' Negligence Claim............................................... 24

                        a.      The ELR .................................................................... 24

                                i.      The ELR Presents an Actual and True Conflict
                                        Between Ohio Law and the Law in Alabama,
                                        Arkansas, Florida, and Mississippi. ................................. 24

                                ii.     The Restatement Factors Require the Application of
                                        the Law of Each Plaintiff's Home State. .......................... 27

                                        1.      The place where the injury occurred.................... 27

                                        2.      The place where the conduct causing injury
                                                occurred................................................................. 28

3. The domicile, residence, nationality, place of incorporation, and place of business of the parties ................................................................. 28

4. The place where the relationship, if any, between the parties is centered ............................ 29

5. The Restatement factors weigh in favor of applying Plaintiffs' home state laws. ................... 29

b. Duty to Protect Against Data Breaches ........................................ 30

i. An Actual and True Conflict Exists Between Ohio Law and the Laws of Florida, Nevada, Alabama, Kansas, Michigan, and Georgia. ....................................... 30

ii. The Restatement Factors Require the Application of the Law of Each Plaintiff's Home State. .......................... 32

c. Apportionment of Damages ......................................................... 33

i. The Apportionment of Damages Presents an Actual and True Conflict. ............................................................... 33

ii. The Restatement Factors Require the Application of the Law of Each Plaintiff's Home State. .......................... 34

2. Negligence Per Se ................................................................................... 34

a. Alabama, Georgia, and Mississippi Do Not Limit Negligence Per Se to Statutes that Contain Express Private Rights of Action. ..................................................................... 35

b. Application of the Restatement Factors Proves Fatal to Plaintiffs' Attempt To Globally Apply Ohio Law. ...................... 36

3. ODTPA ................................................................................................... 37

C. Plaintiffs' Proposal To Globally Apply Ohio Law Does Not Facilitate Class Certification ............................................................................................... 40

V. CONCLUSION ........................................................................................................ 40

## I.   <u>INTRODUCTION</u>

The financial institution plaintiffs ("Plaintiffs"), located in sixteen different states, seek to represent a nationwide class and to apply Ohio law uniformly across the putative class's claims. The reason why is clear—doing so would remove one of the many hurdles to class certification that Plaintiffs must overcome to proceed with their claims on a classwide basis.  But doing so would also violate due process and Pennsylvania's choice of law rules given that Plaintiffs and their claims have little, if any, connection to Ohio.[1]

Plaintiffs seek to hold the Wendy's Defendants ("Wendy's") liable for a third-party criminal cyberattack (the "Data Breach") suffered by certain independently owned and operated franchisee restaurants of the Wendy's brand ("Franchisee Restaurants").  Plaintiffs stretch to argue that Ohio law governs their claims, relying on one solitary and largely irrelevant fact—Wendy's is headquartered in Ohio.  But Wendy's did not cause, and its systems and data were not involved in, the Data Breach.  The Data Breach only impacted certain Franchisee Restaurants.  None of the restaurants that Wendy's owns and operates ("Company Restaurants") were impacted, nor did the attackers use any Wendy's system to perpetrate the attack.  Thus, the fifteen other states where Plaintiffs have their principal places of business (their "home states") have a far greater interest than Ohio in applying their laws. ██████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████

---

[1] Wendy's does not challenge the application of Ohio law to Plaintiffs with principal places of business in that state.  "Plaintiffs" shall refer to those Plaintiffs outside of Ohio.

Plaintiffs' Motion to Apply Ohio Law ("Motion" or "Mot.") amounts to nothing more than an all-out assault on federalism and due process and directly contravenes Pennsylvania's choice of law rules for three important reasons. First, Plaintiffs make countless *false* representations that, once corrected, eviscerate Plaintiffs' theory that Ohio law should apply globally. Second, due process precludes the global application of Ohio law. For Ohio law to be applied in a constitutionally permissible manner, Plaintiffs' claims must have a substantial aggregation of contacts with Ohio. Plaintiffs' claims have virtually no contact with Ohio whatsoever. Third, Plaintiffs turn Pennsylvania's three-step choice of law analysis on its head. Plaintiffs skip over the first two steps by devoting the first twenty-six pages of their Motion to their erroneous theory that Wendy's conduct in Ohio caused their alleged injuries. Plaintiffs' theory is factually baseless. Moreover, the location of the conduct causing the injury is only one of many factors considered in the third and final step of Pennsylvania's choice of law analysis. Correctly analyzed, none of the factors compels the application of Ohio law.

Accordingly, the Court should follow Third Circuit authority rejecting Plaintiffs' overly simplistic approach and deny Plaintiffs' Motion. The only option that comports with both due process and Pennsylvania's choice of law rules is to apply the law of each Plaintiff's home state.

## II.   <u>STANDARD OF REVIEW</u>

Plaintiffs bear the burden of demonstrating that the global application of Ohio law is constitutionally permissible and comports with Pennsylvania's choice of law analysis. *Parkinson v. Hyundai Motor Am.*, No. SA CV06-345, 2008 WL 11318507, at *1 (C.D. Cal. Nov. 6, 2008) (the party seeking to apply one state's laws bears the burden of showing that the law of that one state, not the other forty-nine, should be applied to each class member); *Dawson v. Dovenmuehle Mortg., Inc.*, 214 F.R.D. 196, 201 (E.D. Pa. 2003). To the extent the Court finds it necessary to

resolve disputed issues of fact, the Court should apply the same standard that it would to a motion for class certification. *See Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (the Court must make findings and factual determinations at the class certification stage). The failure to conduct an adequate choice of law analysis is reversible error. *See Powers v. Lycoming Engines*, 328 F. App'x 121, 128 (3d Cir. 2009).

## III.   BACKGROUND

Contrary to Plaintiffs' argument, the facts do not support the application of Ohio law because Wendy's conduct did not cause the Data Breach. The evidence also shows that Plaintiffs and their claims lack virtually any connection to Ohio. Rather, Plaintiffs and their claims are centered in their home states.

### A.   Overview

The Data Breach occurred exclusively at independently owned and operated Franchisee Restaurants. Ex. A ("DeCarlo Decl.") ¶¶ 4-5, 17. Not a single Company Restaurant was impacted. *Id.* ¶ 17. At the time of the breach, restaurants operated by franchisees utilized a number of third-party point of sale ("POS") systems. *Id.* ¶ 3. The two relevant here are the Wand POS system, a product of Wand Corporation ("Wand"), and the Aloha POS system, a product of NCR Corporation. *Id.* ¶¶ 3-5.

The Data Breach involved two separate malware variants—referred to as Variant A and Variant B. *Id.* ¶¶ 4-5. Variant A only impacted certain Franchisee Restaurants using the Wand POS system and receiving POS support from Wand. *Id.* Variant B only impacted certain Franchisee Restaurants using the Aloha POS system that had contracted with one particular POS support provider, third-party Dumac Business Systems, Inc. ("Dumac"). *Id.* None of the Company

Restaurants was impacted by either variant, and the attackers did not use any Wendy's system to perpetrate the attack.  *Id.* ¶ 17.

  Wendy's did not cause the Data Breach as Plaintiffs insinuate in their Motion.  As it relates to Variant A, criminal attackers compromised the credentials of an employee of Wand, a Minnesota company.  *Id.* ¶ 4.  With those compromised credentials, the attackers were able to install the malware directly onto the POS systems of the Franchisee Restaurants located ███████ █ states using a remote access tool, LogMeIn ("LMI").  *Id.* ¶¶ 4, 14.  LMI provided a direct connection between Wand and the Franchisee Restaurants' POS systems.  *Id.*



The criminal attackers that installed Variant B used a similar tactic.  The attackers first compromised the credentials of employees of New York-based Dumac.  *Id.* ¶ 5.  Dumac also used LMI to access the POS systems of Franchisee Restaurants it supported.  *Id.*  With the compromised credentials, the attackers used LMI to connect to Franchisee Restaurants ██████████ and install the Variant B malware on their POS systems.  *Id.* ¶ 14.



Plaintiffs' claim that "[a]ll relevant IT security decisions that enabled the Data Breach were made in Ohio by Ohio-based Wendy's employees" is demonstrably false.  Mot. at 11.[2] ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████

---

[2] The misrepresentations and confusion Plaintiffs sow are so pervasive that it is not possible to respond to each one within the page limits.
[3] For all citations to Plaintiffs' exhibits, the page numbers refer to the Bates number located at the bottom right corner of the document.



| Plaintiffs' Representation | True or False? |
|---|---|
| Data Breach involved "Wendy's point-of-sale ('POS') and computer systems."  Mot. at 1. | **False.**  Plaintiffs concede that the Data Breach involved *only* Franchisee Restaurants.  Mot. at 3-4, 9. |
| | **False.** |
| | **False.** |
| | **False.** |
| | **False.** |
| | **False.** |

## B.    Wendy's Relationship with Its Franchisees

Plaintiffs play fast and loose in an attempt to paint a picture that Wendy's made decisions in Ohio that caused the Data Breach.  In doing so, Plaintiffs lump together franchisees using the Wand POS system with franchisees using the Aloha POS system, but key differences exist between the two.

### 1. *Franchisees Using the Wand POS System*

███████████████████████████████████████████████████████████████

███████████████████ Indeed, virtually all of the "evidence" that Plaintiffs rely upon in their

Motion pertains to Aloha—not Wand.  *See* Mot. at 15-19.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████

Finally, Plaintiffs are wrong that Wendy's response to Variant A shows it could have "prevented or mitigated" the Data Breach.  Mot. at 7.  ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

### 2.    *Franchisees Using NCR's Aloha POS System*

Plaintiffs fare no better with their attempt to tether Wendy's to the Variant B malware that impacted franchisees using the Aloha POS system that received support from Dumac.  Plaintiffs urge the Court to apply Ohio law because, as in every franchisor-franchisee relationship, Wendy's has adopted certain uniform standards.  Mot. at 9-10.  █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████

Wendy's requirement that all restaurants convert to the Aloha POS system also fails to support Plaintiffs' Motion.  *See* Mot. at 13.  ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████  Thus, Wendy's conversion to the Aloha POS system played no role whatsoever in the Data Breach.

Plaintiffs also point the Court ████████████████████████████████████

████████████████████████████████████████████ ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

        ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████.

---

[4] There is no corresponding document for the Wand POS system, as Wendy's had no involvement with that system.

Finally, Plaintiffs' attempt to twist Wendy's assistance in stopping the criminal attack on its franchisees and their customers to demonstrate that Wendy's could have prevented the Data Breach is misguided and misleading.  Mot. at 7.  As set out above, Wendy's neither caused the Data Breach nor was responsible for franchisees' data security.  The Data Breach began with the attackers compromising the credentials of employees of third-party Dumac; █████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

## C.    Plaintiffs

Plaintiffs are credit unions and banks located in fifteen different states that issued payment cards to their customers.  Compl. ¶¶ 13-34, 55-57.  ████████████████████████

██  ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

Plaintiffs were also injured in their home states.  ████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████  Specifically, Plaintiffs allege their injuries flowed from their customers' use of

---

[5] Exhibits B and C are charts summarizing the relevant facts with supporting citations.

payment cards at impacted Franchisee Restaurants.  Mot. at 1. ███████████████

█████████████████████████████████████████████████████████████████

███████████████████████

     Take, for example, Plaintiff Alcoa Community Federal Credit Union ("Alcoa"), ██████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

     Similarly, AOD is headquartered in Oxford, Alabama, ███████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████

     The facts of Alcoa and AOD are not unique, but nevertheless Plaintiffs seek to apply Ohio

law to each Plaintiff's claims.  *See* Exs. B, C.

## IV.   ARGUMENT AND CITATION TO AUTHORITIES

In analyzing choice of law, this Court must reach a conclusion that satisfies both due process and Pennsylvania's choice of law analysis.  The Parties have proposed different approaches to choice of law—with Plaintiffs arguing for the uniform application of Ohio law, and Wendy's arguing that each Plaintiff's claims are governed by its home state's law.  Plaintiffs have not met their burden of establishing that Ohio law can be applied globally to the named Plaintiffs' claims (let alone to a nationwide class), and their Motion must be denied.  First, Ohio lacks sufficient contacts to each Plaintiff's claims and, for that reason, due process precludes global application of Ohio law.  Second, under Pennsylvania's choice of law analysis, true conflicts permeate each Plaintiff's substantive claims, and application of the relevant Restatement factors requires the Court to apply the law of each Plaintiff's home state when it conflicts with Ohio.  Thus, the only proffered solution that meets both tests is Wendy's solution: the law of each Plaintiff's home state must apply to its claims.

### A.   Global Application of Ohio Law Violates Due Process.

Contrary to Plaintiffs' suggestion, this Court cannot apply Ohio law universally without offending the Constitution.  Plaintiffs, "[a]s the moving party and the party seeking to apply [Ohio] law to a nationwide class," "bear the burden of demonstrating that the application of [Ohio] law would satisfy constitutional due process requirements under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)."  *Nat'l Seating & Mobility, Inc. v. Parry*, No. C10-02782JSW, 2011 WL 4831198, at *3 (N.D. Cal. Oct. 12, 2011).  Notwithstanding this burden, Plaintiffs devote just *one* paragraph to the due process analysis.  Mot. at 39.  That one paragraph, moreover, focuses only on whether ***Wendy's*** could have expected Ohio law to apply in this case; it ignores Plaintiffs' claims

and their connection to Ohio.  This is not surprising considering the mountain of evidence proving

the lack of any connection between Plaintiffs' claims and Ohio.

"Putative class members have a due process right to have their claims governed by state

law applicable to their dispute," *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 213 (E.D. Pa. 2000),

and due process is violated when a court attempts to apply the law of one state with "little or no

relationship" to the transaction "in order to satisfy the procedural requirement that there be a

'common question of law.'"  *Shutts*, 472 U.S. at 821.  To ensure that the dictates of federalism and

due process are respected, the Court must first determine whether "[Ohio] law conflicts in any

material way with any other law which could apply" and, assuming it does, "[Ohio] must have a

'significant contact or significant aggregation of contacts' to the claims asserted by each member

of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [Ohio]

law is not arbitrary or unfair."  *See Shutts*, 472 U.S. at 816, 821 (quoting *Allstate Ins. Co. v. Hague*,

449 U.S. 302, 312-13 (1981)).  Here, although

> it might be desirable for the sake of efficiency to settle upon one state, such as
> [Ohio], and apply its law in lieu of the other 49 jurisdictions,[6] due process requires
> individual consideration of the choice of law issues raised by each class member's
> case before certification.  Since the laws of each of the 50 states vary on important
> issues that are relevant to Plaintiffs' causes of action and [Wendy's] defenses, the
> Court cannot conclude that there would be no conflict in applying the law of a single
> jurisdiction.  Thus, the Court will need to apply the law of each of the states from
> which Plaintiffs hail.

*Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998).  In fact, "[f]ederal courts unanimously

reject plaintiffs' attempt[s] to apply the law of one state in non-federal question class suits.  Courts

---

[6] At this stage of the proceedings, there are only sixteen states at issue.  However, at the class
certification stage, this court will necessarily have to grapple with additional conflicts when
considering a nationwide class.  See Section IV, *infra*; *see also Auto. Leasing Corp. v. Mahindra
& Mahindra, Ltd.*, No. 1:12-cv-2048-TWT, 2014 WL 988871, at *4 (N.D. Ga. Mar. 14, 2014)
("[T]he Court would have to conduct differing due process analyses for many of the approximately
340 potential class members.").

find this attempt to end-run legal variation as a simplistic approach that ignores state law choice of law principles and violates constitutional due process concerns." *Lyon*, 194 F.R.D. at 217 (internal quotation omitted); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1007 (3d Cir. 1986) ("[T]he dictates of state law may not be buried under the vast expanse of a federal class action.").

### 1.    *Material Conflicts Exist With Respect To Each Plaintiff's Claims.*

Plaintiffs assert three substantive claims for relief: (1) negligence; (2) negligence per se; and (3) violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01, *et seq.* ("ODTPA").[7]  As detailed below and in the exhibits attached, outcome-determinative differences in state law exist as to each and every claim.

### a.    Negligence

There can be no reasonable dispute that negligence laws in the implicated states conflict in several meaningful respects.

> The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may as the plaintiffs have argued forcefully to us differ among the states only in nuance, though we think not, for . . . nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts.

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995) (considering state law differences with respect to the role of industry practice or custom in determining a claim for negligence); *see Sanders v. Johnson & Johnson, Inc.*, No. 03-2663(GEB), 2006 WL 1541033, at *5 (D.N.J. June 2, 2006) ("States, for example, provide different formulations concerning

---

[7] A due process and choice of law analysis is not necessary for the declaratory judgment claim because such a claim is "governed by the federal rules regarding declaratory judgment actions in diversity cases." *ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, No. 2:14-cv-72, 2014 WL 6607280, at *8 (W.D. Pa. Nov. 19, 2014) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986)).

negligence and its related concepts, and at least in some circumstances, those differences can be important."); *In re Paxil Litig.*. 212 F.R.D. 539, 544-45 (C.D. Cal. 2003) (quoting *In re Rhone-Poulenc*, 51 F.3d at 1300-01).

Ohio law differs markedly from the laws of many of Plaintiffs' home states.  As just one example, Ohio's economic loss rule ("ELR") bars Plaintiffs' negligence-based claims.  See Section IV.B.1.a, *infra*.  Yet other states, such as Alabama, Arkansas, Florida, and Mississippi would likely not apply the ELR to Plaintiffs' negligence claims.  *See* Ex. D.  Other areas of conflict include whether the state recognizes a common law duty to protect data and how damages are apportioned. Exs. E, F.

These distinctions become even more important where, as here, Plaintiffs assert "relatively novel claim[s] for relief[.]"  *Lewallen v. Medtronic USA, Inc.*, No. C01-20395RMW, 2002 WL 31300899, at *5 (N.D. Cal. Aug. 28, 2002) ("Here, the proposed class is nationwide, and therefore, each of the fifty states may have an interest in seeing that its law is applied in an action involving one of its own injured citizens. Particularly where plaintiffs are asserting a relatively novel claim for relief such as medical monitoring—the differences in state law are likely to be substantial."); *see In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1300.  Plaintiffs, which are all payment-card issuing financial institutions, seek to impute a common law duty on a merchant whose independently owned and operated franchisees (all of which are also independent Merchants of Record) were victims of a criminal data breach.  Plaintiffs fail to cite a single case, however, where a court has imposed liability in such a circumstance.[8]

---

[8] Indeed, there are a diversity of viewpoints about the viability of a negligence claim even in the more "typical" data breach cases, which are themselves relatively new, where the payment-card issuing financial institutions seek to hold a merchant directly liable for a breach of that merchant's system.  *Compare In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14–MD–

b.      Negligence Per Se

Plaintiffs concede that material conflicts exist among states' negligence per se laws.  Mot.

30 n.7.  As demonstrated in Exhibit G, some states do not recognize negligence per se at all, while

Ohio does, and some states do not limit the application of negligence per se to statutes that

expressly authorize a private right of action, while Ohio does.  These differences necessarily have

case-dispositive consequences in this litigation that fundamentally impact the viability of each

Plaintiff's claim.  *See Bearden v. Wyeth*, 482 F. Supp. 2d 614, 618 & n.5 (E.D. Pa. 2006).

c.      ODTPA

Plaintiffs also purport to bring a claim for violation of the ODTPA on behalf of a putative

nationwide class.  Compl. ¶¶ 181-200.  The ODTPA, however, conflicts with the consumer

protection laws of states across the country in several material respects, as more fully set forth in

Exhibit H, including pre-suit notice requirements, the requisite elements of the offense, and the

remedies available.

Though Plaintiffs concede that consumer protection laws vary widely from state to state,

Plaintiffs do not even attempt to address whether the ODTPA can be applied globally consistent

with due process.  Mot. at 30 n.7.  And courts in the Third Circuit and across the country have

repeatedly concluded that the application of one state's statutory consumer protection law to a

nationwide class offends due process.  *See Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2011 WL

2975768, at *5-6 (D.N.J. July 21, 2011) (refusing to apply the New Jersey Consumer Fraud Act to

out-of-state consumers); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla.

2002) ("The Court concludes that, under *Shutts*, the Due Process Clause of the Constitution

---

2583–TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) (finding a duty), *with Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, No. 12-1169, 2014 WL 2738220, at *2 (E.D. Pa. June 17, 2014) (no duty).

prohibits application of [the Florida Deceptive and Unfair Trade Practices Act] to a nationwide class in this case."); *Lyon*, 194 F.R.D. at 211 ("Applying the Pennsylvania consumer fraud act to all the putative class members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or who did not purchase their boats in Pennsylvania."); *Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 350-51 (D.N.J. 1997) (same).

Because of these conflicts, Plaintiffs bear the burden of demonstrating that sufficient contacts between their *claims* and *Ohio* exist "such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818.

### 2. *Significant Contacts*

Ohio lacks any meaningful connection to Plaintiffs' claims, and for that reason due process prohibits the global application of Ohio law. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate*, 449 U.S. at 312-13. This inquiry cannot be conducted on a classwide basis because an "individualized choice of law analysis to each plaintiff's claims" is required. *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996); *see Powers v. Lycoming Engines*, 328 F. App'x 121, 124 (3d Cir. 2009) ("[A]ggregate class action should not alter the applicable substantive legal rights of the plaintiffs."). It is therefore this Court's duty to conduct a claim-by-claim review to assess whether each Plaintiff's claims have a sufficient connection to Ohio. It is not enough to focus solely on the defendant's connection to Ohio. Rather, "to have any meaning," the defendant's contacts within a particular state "must be weighed in the

context of a particular class member's circumstances." *Cruz v. Lawson Software, Inc.*, No. 08-5900 (MJD/JSM), 2010 WL 890038, at *7 (D. Minn. Jan. 5, 2010).

Plaintiffs' assessment of the "contacts" in this case is flawed for two reasons. First, Plaintiffs' brief is riddled with misrepresentations and factual inaccuracies in an attempt to create an Ohio connection where one does not exist. Second, Plaintiffs focus exclusively on Wendy's and its contacts with Ohio, ignoring the lack of a connection between those contacts and Plaintiffs' claims. This leaves the Court with only a distorted half-truth. An accurate assessment of (1) the Data Breach and (2) Plaintiffs' alleged injuries forecloses the global application of Ohio law.

a.   <u>The Data Breach Has Virtually No Connection To Ohio.</u>

The crux of Plaintiffs' argument is that Wendy's is somehow responsible for a third-party criminal attack on its franchisees, and because Wendy's is headquartered in Ohio, that state's law should govern. The Data Breach, however, did not occur in Ohio. Criminal attackers compromised the systems of service providers, Wand and Dumac, in Minnesota and New York, respectively. See Section III, *supra*. The attackers used LMI to connect directly to Franchisee Restaurants located in ████████████ and install the malware variants. *Id.* ████████
███████████████████████████████████████████████████████████
███████████████████████████████

Indeed, Plaintiffs' erroneous theory of vicarious liability—that Wendy's is somehow liable for a third-party criminal attack on its franchisees—compels the conclusion that Ohio is but one of ████████ entangled in this litigation. ████████████████████████
███████████████████████████████████████████████████████████

████    Moreover, each Plaintiff bases its claims on losses supposedly incurred after its customers used their payment cards at Franchisee Restaurants, ████████████████

███████████████████████   At best, Ohio is only meaningfully connected to those Plaintiffs located in Ohio.

Plaintiffs suggest that "all important decisions and the underlying acts" giving rise to Plaintiffs' claims occurred in Ohio. Mot. at 39. But, Plaintiffs hinge their claims on Wendy's failure to take certain steps with respect to each Franchisee Restaurant, and those steps would have been taken in the state where the Franchisee Restaurant was located. Stated differently, the alleged failure to act occurred just as much, if not more, in each Franchisee Restaurant's home state. Indeed, Plaintiffs' position is directly contradicted by their own complaint. Plaintiffs allege that Wendy's breached a duty owed to Plaintiffs in the following respects: registers at Franchisee Restaurants were using outdated software (Compl. ¶ 111); routers at Franchisee Restaurants were missing and led to issues with the firewalls (*Id.* ¶ 113); hundreds of Franchisee Restaurants needed to upgrade their network security (*Id.* ¶ 116); and Franchisee Restaurants failed to upgrade their payment system to use chip-based technology (*Id.* ¶¶ 128-30). Even if these allegations were true, Plaintiffs cannot dispute that correcting each of the alleged deficiencies would occur in each Franchisee's home state. The facts simply do not support the conclusion that Wendy's could or should have taken some action from Ohio to avoid the Data Breach because all of the actions Plaintiffs allege Wendy's failed to take would have occurred at Franchisee Restaurants scattered across the country.

"When considering fairness in [the due process] context, an important element is the expectation of the parties." *Shutts*, 472 U.S. at 822. Plaintiffs wrongly claim that Wendy's expected Ohio law to govern this litigation ████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████   It does not

establish that Wendy's would expect that claims by financial institutions arising from a criminal cyberattack—not of Wendy's systems but of Franchisee Restaurants—would be governed by Ohio law.

                    b.      <u>Plaintiffs' Damages Have No Connection To Ohio.</u>

Perhaps the greatest flaw in Plaintiffs' due process analysis is that Plaintiffs fail to consider their own contacts (or lack thereof) with the relevant states.  The alleged harm from the Data Breach, and in turn each Plaintiff's connection to the Data Breach, ███████████████████ █████████████████████████

For Plaintiffs' claims of negligence and negligence per se, the damages allegedly caused by the Data Breach include the costs of reissuing compromised cards, investigating claims of fraudulent activity, refunding fraudulent charges, increasing fraud monitoring on potentially impacted accounts, and taking other steps to protect themselves and their customers.  Compl. ¶¶ 173, 180.  However, Plaintiffs cannot—and do not—██████████████████████████ █████████████████████ The same is true for Plaintiffs' ODTPA claim.  Plaintiffs allege they relied on Wendy's SEC filings or other public statements regarding the security of POS systems.  Compl. ¶¶ 185-93. ███████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ █████████████████████

Finally, the evidence solidifies that each Plaintiff's claims are based largely, if not entirely, on ███████████████████ ██ ████████████████████████████████



In the face of this evidence, there is no support for finding that Plaintiffs expected Ohio law to govern the claims they assert here.  *See Shutts*, 472 U.S. at 822; *Cruz*, 2010 WL 890038, at *7 ("If a [plaintiff] worked only in Texas, for example, surely the application of [Minnesota law] would be surprising.").

For this very reason, courts in the Third Circuit and across the country routinely balk at any attempt to globally apply the law of the defendant's principal place of business.[9]  In *Lyon*, for example, the plaintiff alleged that the defendant intentionally misrepresented features of engines it manufactured.  194 F.R.D. at 209.  The plaintiff argued that the defendant published and disseminated false specifications about the engines from its corporate headquarters in Illinois, and for that reason Illinois law should apply globally.  *Id.* at 209, 215.  Similarly, in *Powers v.*

---

[9] *See Powers*, 328 F. App'x at 125 (finding that the district court failed to conduct a constitutionally adequate conflicts analysis when it determined that Pennsylvania law had the most significant contacts simply because the defendant, which was located in Pennsylvania, purportedly manufactured the defective parts in Pennsylvania); *Cruz*, 2010 WL 890038, at *9 (refusing to apply the law of the defendant's headquarters (Minnesota) where "[p]laintiffs have failed to offer any evidence of how the 438 non-Minnesota residents are linked to Minnesota"); *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717 (JJF), 2010 WL 8591815, at *53 (D. Del. July 28, 2010) ("The location of Intel's corporate headquarters in California and plaintiffs' allegations that Intel engaged in misconduct in that state do not establish that California has a significant contact with the claims of non-resident class members in this action."); *Tidwell v. Thor Indus., Inc.*, No. 05-CV-2088-L(BLM), 2007 WL 8083631, at *8 (S.D. Cal. Mar. 26, 2007) (same); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) (same).

*Lycoming Engines*, the defendant supplied piston engines for aircrafts, and the plaintiffs brought breach of implied warranty claims alleging that the defendant knew for years that its products were unsafe and likely to fail. 272 F.R.D. 414, 417, 419 (E.D. Pa. 2011). In *Powers*, the plaintiffs advocated for global application of Pennsylvania law because the engines were manufactured in Pennsylvania and the defendant was located there. *Id.* at 417, 423. In both cases, however, the courts concluded that the defendant's actions and presence in a particular state were *not* sufficient to apply that state's law given the *absence* of the claim's connection to that state. *Lyon*, 194 F.R.D. at 215; *Powers*, 272 F.R.D. at 424.

The above analysis solidifies that only the home state of each Plaintiff, not Ohio, has the requisite connection to Plaintiffs' claims to satisfy due process. For that reason, Ohio law cannot apply globally, Plaintiffs' Motion should be denied, and the Court should apply the law of each Plaintiff's home state.

## B.     Pennsylvania's Choice of Law Analysis

In addition to the constitutional barrier to applying Ohio law globally, Pennsylvania's choice of law analysis also dooms Plaintiffs' Motion. Pennsylvania adheres to a rigorous three-step inquiry that considers the conflicts and governmental interests between implicated state laws for each claim and affirmative defense. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226-27 (3d Cir. 2007). ***First***, the Court determines whether there is an actual conflict between the states' laws by identifying the laws at issue and assessing whether there are relevant differences. *Pac. Emp'rs Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012). ***Second***, if the Court finds relevant differences between the laws, "then the court should examine the governmental policies underlying each law" to determine if there is a "true" conflict. *Hammersmith*, 480 F.3d at 230. A true conflict exists if "both jurisdictions' interests would be impaired by the application

of the other's laws." *Id.* ***Third***, if a true conflict exists, the Court must then determine which state has "the greater interest in the application of its law." *Id.* at 231. To determine which state has the greater interest, the Court must examine the facts of the case by "weigh[ing] each state's contacts on a qualitative scale according to their relations to the policies and interest underlying the particular issue." *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 696 (W.D. Pa. 2013) (Fischer, J.). To do this, Pennsylvania courts apply the factors set out in the Second Restatement of Conflicts. *Id.* For Plaintiffs' negligence and negligence per se claims, the relevant contacts are: "(a) the place where the injury occurred; (b) the place where the conduct causing injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Taylor v. Mooney Aircraft Corp.*, 265 F. Appx. 87, 91 n.4 (3d Cir. 2008); Restatement (Second) of Conflicts § 145(2). For Plaintiffs' ODTPA claim, the Court looks to the factors set forth in the Second Restatement of Conflicts Section 148. *Lyon*, 194 F.R.D. at 214. As Pennsylvania courts have repeatedly held, the most important contact in determining which state has the greatest interest is the place where the injury occurred, *not* where the conduct causing injury occurred. *Panthera*, 985 F. Supp. 2d at 700. In fact, even when "the conduct giving rise to the alleged torts took place in Pennsylvania and the [ ] Defendants reside here, the place where the harm was felt is more significant" for the choice of law analysis. *Id.*[10]

---

[10] Plaintiffs' citation to *Veridian Credit Union v. Eddie Bauer, LLC*, No. C17-0356JLR, 2017 WL 5194975, at *7 (W.D. Wash. Nov. 9, 2017), for the proposition that the Court should focus on the place where the defendant's conduct occurred is unavailing. First, the court in *Veridian* relied on Washington state case law, which differs from Pennsylvania's precedent. *Id.* Second, the court came to the conclusion that the place of injury was "fortuitous" on a motion to dismiss, without the benefit of the full record of facts. *Id.* Here, the facts demonstrate that the injury was not "fortuitous," because, as set forth in detail below, ███████████████████████████████████

### 1.    Plaintiffs' Negligence Claim

Plaintiffs erroneously argue that negligence laws are "uniform" among the states, so no conflicts exist.  Mot. at 29.  Courts have roundly rejected this argument: "The common law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified.  The voices of the quasi-sovereigns that are the states of the United States sing negligence with a different pitch."  *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301 (7th Cir. 1995) (internal quotation marks and citation omitted); *Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2010 WL 1798441, at *8 (D. Or. May 4, 2010) (denying class certification in part because negligence laws "vary considerably from state to state").  There are numerous material variations in the negligence laws of the implicated states, including (1) the applicability of the ELR; (2) the existence of a duty to prevent data breaches; and (3) apportionment of damages. These variations are true conflicts, necessitating the application of the law of each Plaintiff's home state, where Plaintiffs' alleged injuries were incurred.

a.    The ELR

i.    *The ELR Presents an Actual and True Conflict Between Ohio Law and the Law in Alabama, Arkansas, Florida, and Mississippi.*

The ELR is an affirmative defense that seeks to maintain the distinction between remedies in contract and tort law by barring a negligence claim for purely economic losses.  *Werwinski v. Ford Motor Co.*, 286 F. 3d 661, 673-74 (3d Cir. 2002).  Because Plaintiffs seek only economic damages in this case, there is an actual conflict between the Ohio ELR, which bars Plaintiffs' negligence-based claims, and the laws of four other implicated states here—Alabama (AOD), Arkansas (Alcoa), Florida (South Florida Educational Credit Union), and Mississippi (Navigator Credit Union)—all of which would not apply the ELR under the circumstances of this case.

More specifically, Ohio has adopted the ELR because "parties to a commercial transaction should remain free to govern their own affairs," *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005), and Ohio has made the policy decision that there should be no independent duty in tort "to avoid consequential economic damages."  *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477 (6th Cir. 2017).  Indeed, in an analogous case brought by financial institutions against Noodles & Company arising from a data breach, the district court found that Ohio recognizes the ELR and dismissed the case because no exception could save the plaintiffs' negligence claim.  *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017).[11]  Thus, under Ohio law, Plaintiffs' claim would be barred by the ELR, and Ohio has expressed its governmental interest in limiting a defendant's liability for economic damages to the realm of contract law.  *Id.*

On the other hand, some of Plaintiffs' home states, such as Alabama, Arkansas, Florida, and Mississippi, would ***not*** apply the ELR to Plaintiffs' negligence claims.  *Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 184 (Ala. 2010) (Alabama); *Bayer CropScience LP v. Schafer*, 2011 Ark. 518 (2011); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, No. 2:10-CV-2045, 2013 WL 685209, at *2 (W.D. Ark. Feb. 25, 2013) (Arkansas); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 407 (Fla. 2013) (Florida); *Wells v. Robinson Helicopter Co.*, No. 3:12-CV-564-CWR-FKB, 2015 WL 1189847, at *3 (S.D. Miss. Mar. 16, 2015) (Mississippi).  These states have articulated a variety

---

[11] Other Plaintiffs' home states similarly preclude negligence claims for purely economic damages as a matter of law, including Kansas, Nevada, and Pennsylvania.  In addition, Indiana, Iowa, and Texas would find that a negligence claim for economic damages is barred where there is a chain of contracts, as there is here.  And, Georgia, Michigan, and New Mexico would find claims in this case barred unless Plaintiffs demonstrate an independent duty exists, which Plaintiffs have not.  The attached chart identifies these nuanced variations in each state's laws.  Ex. D.

of reasons for refusing to apply the ELR in this context, but have all expressed a reluctance to limit liability in negligence cases unnecessarily or deprive plaintiffs of a cause of action to recover for economic injuries. *See id.*, Ex. D.

An actual conflict exists between Ohio law and the laws of these four states because Plaintiffs' negligence claims would be barred by the ELR if Ohio law applied but not if the laws of Alabama, Arkansas, Florida, or Mississippi applied. This is also a true conflict. If Ohio law applied to the claims of Plaintiffs located in these four states, those Plaintiffs would be deprived of their states' interests in ensuring that plaintiffs have an avenue to recover economic losses resulting from allegedly negligent conduct. Likewise, applying the laws of Alabama, Arkansas, Florida, or Mississippi to Wendy's would impinge Ohio's interest in not only limiting the liability of defendants who conduct business in Ohio, but also in allowing parties to commercial transactions to allocate risk amongst themselves. *See Noodles*, 267 F. Supp. 3d at 1297.

Plaintiffs wrongly argue that (1) a property-damage exception applies and (2) the ELR conflict is a false conflict. Mot. at 29-35. First, Plaintiffs' argument that they are seeking to recover for property damage ignores the reality of their claims. In a similar case, the Third Circuit considered and rejected the very argument that Plaintiffs advance here—that monetary damages are "property"—as absurd: "the argument would totally eviscerate the economic loss doctrine because any economic loss would morph into the required loss of property and thereby furnish the damages required for a negligence claim." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 176 (3d Cir. 2008). Only "tangible physical injury to persons or property" may satisfy this exception to Ohio's ELR. *City of Cincinnati*, 863 F.3d at 477. Plaintiffs have not, and cannot, articulate a tangible physical injury to persons or property.

Second, Plaintiffs' argument that the ELR differences are false conflicts contravenes this Court's own decision in *Panthera*.  There, this Court found a true conflict when the defendant resided in a state whose ELR policy limited a defendant's liability for negligence when purely economic losses were alleged, and the plaintiff resided in a state whose ELR policy expanded a plaintiff's recovery of economic losses.  *Panthera*, 985 F. Supp. 2d at 699 (finding that Pennsylvania's ELR is defendant-friendly, while California's ELR is plaintiff-friendly).  Plaintiffs rely on *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 272 F. Supp. 2d 482, 501 (E.D. Pa. 2003), but their reliance is misplaced.  In that case, the court held that Pennsylvania's defendant-friendly ELR created only a false conflict because Pennsylvania had no interest in the application of its laws given that the defendant had no connection to the state.  *Id*.  Here, unlike the defendant in *Air Products*, Ohio has an interest in applying its laws to Wendy's because Wendy's is headquartered there.  Accordingly, for the reasons set out above, there is a true conflict. The Court must therefore consider the Restatement factors to determine which state's law to apply.

ii.   *The Restatement Factors Require the Application of the Law of Each Plaintiff's Home State.*

Because a true conflict exists, the Court must weigh the four Restatement factors and assess which state has the greater interest in applying its laws.  Here, Plaintiffs' respective home states have the greatest interest in the application of their laws because that is where: (1) Plaintiffs are headquartered; █████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

1.   The place where the injury occurred

This Court has held that the place of injury "represents a contact of substantial significance," *Panthera*, 985 F. Supp. 2d at 700.  Plaintiffs seek to recover the costs they allegedly

27

incurred in responding to the Data Breach. ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

2.      The place where the conduct causing injury occurred

As set forth above, Wendy's did not cause the Data Breach.  The cause of the Data Breach was criminal attackers compromising the credentials of support providers Wand and Dumac, and then using LMI left permanently enabled by third parties to install the malware variants.  Wand and Dumac are headquartered in Minnesota and New York, respectively, and the impacted Franchisee Restaurants are located in ███████████████      Moreover, for each Plaintiff the conduct that directly caused its harm was the installation of malware on the POS systems of Franchisee Restaurants where their customers used their payment cards.  ███████████████

███████████████████████████████████████████████████████████

███████████████      The conduct causing the injury therefore favors the application of each Plaintiff's home state laws.

3.      The domicile, residence, nationality, place of incorporation,
        and place of business of the parties

This factor is neutral because named Plaintiffs reside in sixteen different states and Wendy's resides in Ohio.

4.      The place where the relationship, if any, between the parties is centered

There is no direct relationship between Wendy's and Plaintiffs.  The only connection Plaintiffs have with Wendy's, if any, is as a result of the Data Breach, and that connection was made when Plaintiffs' customers used their payment cards at impacted Franchisee Restaurants.

████████████████████████████████████████████████████████████

████████████████████████████████████████████

5.      The Restatement factors weigh in favor of applying Plaintiffs' home state laws.

The Restatement factors compel the application of the ELRs of Alabama, Arkansas, Florida, and Mississippi to the negligence claims of Plaintiffs headquartered in those states.  Three of the four factors support this result, including the place of injury, which this Court has held "represents a contact of substantial significance." *Panthera*, 985 F. Supp. 2d at 700.  The fourth factor is neutral.

Moreover, when weighed "on a qualitative scale according to their relation to the policies and interests underlying the particular issues," the Restatement factors also support applying the ELRs of these states. *Hammersmith*, 480 F.3d at 231.  ████████████████████

██████████████████████████████████████████████

██████████████████████  Applying the home states' laws supports those states' governmental interests in ensuring that their citizens have legal remedies to recover for injuries allegedly sustained as a result of negligent conduct.  ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

    b.    <u>Duty to Protect Against Data Breaches</u>

        i.    *An Actual and True Conflict Exists Between Ohio Law and the Laws of Florida, Nevada, Alabama, Kansas, Michigan, and Georgia.*

Plaintiffs' negligence claim fails under Ohio law (as well as under the laws of several other implicated states) because in Ohio there is no common law duty to protect against a criminal data breach.  In contrast, Florida, Nevada, Alabama, Kansas, Michigan, and Georgia likely recognize such a duty.

Ohio law has not recognized a common law duty to protect against criminal data breaches. Significantly, Ohio's legislature has expressly considered issues related to data breaches and has chosen not to enact legislation establishing a duty of protection or creating a private cause of action in the event of a data breach.  *See* Ohio Rev. Code Ann. § 1349.192; *see also Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (declining to find a duty to notify of a data breach because the Missouri legislature had provided the sole enforcement authority for notification of a data breach to the Attorney General).  The Ohio legislature's decision not to create a private right of action and to vest sole enforcement authority in the Attorney General reflects Ohio's defendant-friendly policy of shielding its citizens from "consequential economic damages" in tort.  *Deutsche Bank*, 863 F.3d at 477; *see Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 637 (7th Cir. 2007) ("Had the Indiana legislature intended that a cause of action should be available against a database owner for failing to protect adequately personal information, we believe that it would have made some more definite statement of that intent."); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (same).  Where the state legislature has evinced

an intent not to create a new cause of action, this Court should not expand the law. *Pisciotta*, 499 F.3d at 635-36. Rather, the Court should "choose the narrower and more reasonable path [that no such duty exists] (at least until the state Supreme Court tells us differently)." *Id.*; *see Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) (explaining that if a cause of action has never been approved by a state court, "district courts are encouraged to dismiss actions based on novel state law claims").[12]

In contrast, Florida, Nevada, Alabama, Kansas, Michigan, and Georgia have all considered whether there is a duty to protect against data breaches and have found such a duty exists in similar contexts. *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1365 (S.D. Fla. 2017) (Florida); *In re Zappos.com, Inc.*, No. 3:12-CV-00325-RCJ, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (Nevada); *Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 530 (M.D. Ala. 2016) (Alabama); *Hapka v. Carecentrix, Inc.*, No. 16-2372-CM, 2016 WL 7336407, at *5 (D. Kan. Dec. 19, 2016) (Kansas); *Leibovic v. United Shore Mortg., LLC*, No. 15-12639, 2016 WL 6395954, at *4 (E.D. Mich. Oct. 28, 2016) (Michigan); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016) (Georgia). In concluding that a duty exists, courts find that companies have an obligation to act reasonably in safeguarding data, and that plaintiffs have a right to recover for injuries allegedly sustained as a result of a defendant's failure to take adequate steps to secure their data. *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3; *Hapka v. Carecentrix, Inc.*, 2016 WL 7336407, at *5; *Brush*, 238 F. Supp. 3d at 1365.

---

[12] A number of other states similarly have not addressed a data breach duty, and thus, no law exists to support such a duty. *See* Ex. E.

Thus, there is an actual conflict between the law of Ohio, which would not recognize a duty from a merchant to a financial institution to safeguard customer payment card data, and the laws of Florida, Nevada, Alabama, Kansas, Michigan, and Georgia, which likely would recognize such a duty. This actual conflict rises to the level of a true conflict. Ohio law is defendant-friendly, whereas the laws of Florida, Nevada, Alabama, Kansas, Michigan, and Georgia are plaintiff-friendly. Each state's governmental interests would be harmed by the application of the other state's law. *Hammersmith*, 480 F.3d at 231. For instance, and similar to the ELR discussion above, if Ohio law were to be applied to Nevada-based Financial Horizons Credit Union's negligence claim, it would impair Nevada's interest in providing its citizens with an avenue of recovery for supposedly unreasonable conduct that caused harm in Nevada. Conversely, applying Nevada law to Wendy's would impinge Ohio's interest in shielding Ohio companies from consequential economic damages arising from third-party criminal conduct.

> ii.  *The Restatement Factors Require the Application of the Law of Each Plaintiff's Home State.*

The same analysis of the Restatement factors discussed above in connection with the ELR applies here. Thus, three out of the four factors, including the most significant factor (place of injury) support the application of the home states' laws for Plaintiffs headquartered in Florida, Nevada, Alabama, Kansas, Michigan, and Georgia. Applying these laws will advance each respective state's interest in ensuring its citizens have a mechanism for recovering harm suffered as a result of allegedly negligent conduct. And for the same reasons set out above, these states' interests dwarf any interest Ohio may have in applying its law. Accordingly, each Plaintiff's home state laws should apply to govern whether a negligence duty exists.

c.   Apportionment of Damages

Finally, although Plaintiffs attempt to attribute liability to Wendy's, it is undisputed that numerous entities are connected to the Data Breach: franchisees, Wand, Dumac, and the criminal attackers.  Wendy's will argue that any resulting damages should be apportioned amongst the responsible actors.  However, each state's legislature has made its own policy decision as to how liability should be allocated, presenting both an actual and true conflict.

i.   *The Apportionment of Damages Presents an Actual and True Conflict.*

Ohio has adopted the fifty percent modified comparative fault scheme for apportioning damages.  R.C. § 2307.22.  Under this statute, a defendant who is more than fifty percent responsible for a plaintiff's injury is jointly and severally liable in tort for all compensatory damages.  R.C. § 2307.22.  A defendant who is less than fifty percent responsible for the plaintiff's injury will only be liable for his or her proportionate share of the compensatory damages.  R.C. § 2307.22.  Thus, under Ohio law, if Wendy's is found to be more than fifty percent liable, it would be jointly and severally liable for all of Plaintiffs' damages, regardless of whether a jury concluded that a third party was also responsible.

In contrast, in Missouri, Michigan, and Florida, a defendant is only liable for the portion of fault that the jury expressly assigns to that defendant.  Mo. Ann. Stat. § 537.095; *Collins v. Hertenstein*, 181 S.W.3d 204, 211-12 (Mo. Ct. App. 2005); *Lamp v. Reynolds*, 645 N.W.2d 311, 315 (Mich. Ct. App. 2002); MCL §§ 600.6304, 600.2957, 600.2959; Fla. Stat. Ann. § 768.81(3).  Thus, hypothetically, if a jury were to find Wendy's fifty-one percent liable, then Wendy's would only be responsible for fifty-one percent of the damages and no more.

These distinctions in state law represent a true conflict because each state, through its legislature, has carefully selected its method of apportioning damages as between plaintiff,

defendant, and absent third parties. *See Kemper Nat'l P & C Cos. v. Smith*, 615 A.2d 372, 380 (Pa. Super. 1992) (surveying the variety in state law damages and concluding that many states' common laws on contribution had been replaced by statutory authority). Application of Ohio's law would impinge the policies of Missouri, Michigan, and Florida, and vice-versa. *See, e.g.*, *Connell v. Riggins*, 944 So. 2d 1174, 1177-78 (Fla. Dist. Ct. App. 2006) (finding a "pivotal" conflict of law between Florida and Georgia's laws on apportionment of damages).[13]

> ii.     *The Restatement Factors Require the Application of the Law of Each Plaintiff's Home State.*

For the same reasons as in the ELR context, the Restatement factors weigh in favor of applying the laws of each Plaintiff's home state to apportionment of damages. Plaintiffs' home states have the greatest interest in applying their laws because each Plaintiff was allegedly injured and suffered damages in its home state.

### 2.     *Negligence Per Se*

Plaintiffs argue that Ohio law can be globally applied to their negligence per se claims, which are based on an alleged "violation of § 5 of the FTC Act (and similar state statutes)." Compl. ¶ 177. Plaintiffs correctly recognize that a true conflict exists between states that recognize the doctrine of negligence per se, like Ohio, and states that do not, like Arkansas and Louisiana. Mot. at 30 n.7; *see Bearden v. Wyeth*, 482 F. Supp. 2d 614, 618 & n.5 (E.D. Pa. 2006) (a true conflict exists because Pennsylvania recognizes negligence per se and Arkansas does not); *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 135 (3d Cir. 2011) (true conflicts exist where one state recognizes a claim and another does not); *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, No. 15cv0631, 2015 WL 4608118, at *3 (W.D. Pa. July 31, 2015) (same). And while recognition of

---

[13] As set forth in Exhibit F, states vary considerably on the issue of apportionment.

doctrine is certainly an obvious conflict, Plaintiffs' concession overlooks another true conflict as well: some states allow negligence per se claims based on statutes without express private rights of action, while others do not. *See* Ex. G. Finally, and most importantly, Plaintiffs' Restatement analysis focuses on just one factor to the exclusion of the other three. When applied to the facts of this case, the inescapable conclusion is that each Plaintiff's home state has the greatest interest in this litigation, and Ohio law cannot be universally applied.

a.   <u>Alabama, Georgia, and Mississippi Do Not Limit Negligence Per Se to<br>Statutes that Contain Express Private Rights of Action.</u>

Some states that recognize the doctrine of negligence per se require that the statute on which the claim is based expressly authorize a private right of action. *See In re E.I. du Pont de Nemours & Co., C-8 Personal Injury Litig.*, No. 2:13-md-2433, 2015 WL 4092866, at *21 (S.D. Ohio July 6, 2015); *Pullen v. West*, 92 P.3d 584, 594 (Kan. 2004). In those states, Plaintiffs' negligence per se claim is barred to the extent it is based on Section 5 of the FTC Act, which contains no private right of action. *See Hyvostal v. Am. Idea Mgmt Corp.*, No. 91-1792, 1992 WL 133908, at *1 (W.D. Pa. Mar. 23, 1992). Other states impose no such requirement, and a claim based on a statute without a private right of action is not precluded as a matter of law. *See Smith v. Triad of Ala.*, No. 1:14-cv-324, 2015 WL 5793318, at *11 (M.D. Ala. Sept. 29, 2015); O.C.G.A. § 51-1-6; *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *4; *Munford, Inc. v. Peterson*, 368 So.2d 213, 217-18 (Miss. 1979).

This actual conflict is a true conflict. Just as the decision to recognize the doctrine evidences policy decisions made by each state, the decision to *limit* application of the doctrine reveals policy choices as well. States that require an explicit statutory authorization for a private right of action have determined that "when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another." *Nielson v. Ford Motor*

35

*Co.*, 681 N.E.2d 470, 474 (Ohio 1996).  Stated differently, jurisdictions that impose this limitation on the negligence per se doctrine do so out of deference to the legislature's policy judgments about the individuals or entities who are entitled to pursue relief for a violation of the statute in question. *See id.*  Applying a broader negligence per se doctrine that does not contain such a limitation would contravene Ohio's interest in deferring to legislative judgments because it would allow a private citizen to sue for a violation of a statute where the legislature has not authorized such a lawsuit.

On the other hand, those jurisdictions that allow negligence per se claims even in the absence of an express private right of action conclude that negligence per se was meant to protect those harmed by the violation of a statute, irrespective of whether the legislature specifically authorized a private right of action in *that* statute.  *See Pulte Home v. Simerly*, 746 S.E.2d 173, 178-79 (Ga. Ct. App. 2013) (by implementing O.C.G.A. § 51-1-6, the legislature authorized a plaintiff to recover damages from a breach of a duty even when the statute does not provide a private cause of action); *Munford*, 368 So.2d at 217-18 (Miss. 1979) ("When a statute is violated, the injured party is entitled to an instruction that the party violating the statute is guilty of negligence.").  Applying Ohio law in a jurisdiction that has adopted this version of the negligence per se doctrine would impinge that jurisdiction's interests in allowing its citizens to recover in tort for a statutory violation.  In these jurisdictions, Plaintiffs' Motion is contrary to the interests of Plaintiffs in Alabama, Georgia, and Mississippi because it actually *limits* the availability of a cause of action that they would have under their home states' laws.

        b.    <u>Application of the Restatement Factors Proves Fatal to Plaintiffs' Attempt To Globally Apply Ohio Law.</u>

For the same reasons as above, the Restatement factors weigh in favor of applying the laws of each Plaintiff's home state to their negligence per se claim.  Doing so would further those states'

governmental interests because it would provide their citizens broader relief than if Ohio law were to apply.

### 3.    ODTPA

Plaintiffs again concede that true conflicts exist with respect to the various state consumer protection laws, but suggest that their Restatement analysis of negligence is sufficient to allow global application of the ODTPA to a nationwide class.  The flaw in Plaintiffs' position is two-fold.  **First**, Plaintiffs rely on the same Restatement analysis that they do for the negligence cause of action, notwithstanding that Pennsylvania federal courts have adopted a different test for consumer protection laws.  ***Second***, application of the correct test compels the conclusion that Ohio's consumer protection law cannot be globally applied to a nationwide class.  Because the ODTPA cannot be universally applied—and Plaintiffs do not allege a violation of any other state statutes—that cause of action is only available to those Plaintiffs that call Ohio home.

Despite the myriad conflicts among state consumer protection laws,[14] Plaintiffs suggest that the same Restatement factors that apply to their negligence claim allow for global application of Ohio statutory law.  For consumer protection claims, courts in Pennsylvania apply a ***different*** section of the Restatement (Second) of Conflict of Laws that "sets forth factors that the forum state may consider when the 'plaintiff's action in reliance took place in whole or in part in a state other than that where the false misrepresentations were made.'" *Lyon*, 194 F.R.D. at 214.  ███████████

████████████████████████████████████████████████████████████████████

███████ Plaintiffs fail to even consider this important factor in their analysis.

---

[14] Plaintiffs do not dispute that the true conflicts exist among each state's consumer protection laws.  These conflicts are widespread and cover all facets of a consumer protection claim.  Ex. H.

Under the correct test, the Court must consider the following factors:

a.    the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

b.    the place where the plaintiff received the representations,

c.    the place where the defendant made the representations,

d.    the domicil, residence, nationality, place of incorporation and place of business of the parties,

e.    the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

f.    the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.* Here, as in *Lyon*, Plaintiffs filed suit in Pennsylvania but nevertheless attempt to apply another state's consumer protection law globally to a nationwide class. *See id.* at 209. And here, just as in *Lyon*, applying the correct factors compels the conclusion that each Plaintiff's home state law must govern. *See id.* at 215.

Factors (a), (b), and (e)[15] clearly favor application of each Plaintiff's home state law. Plaintiffs allege that Wendy's made certain representations about its POS systems and PCI-DSS compliance. Compl. ¶ 193. ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

---

[15] Although factor (e) generally applies to "tangible things," it is equally persuasive in this context.

████████████████████████████████████████
████████████████████████████████████████

In contrast, only factor (c) weighs in Plaintiffs' favor.  Nevertheless, a Pennsylvania district court has held that this factor alone is not enough to apply the defendant's home state law globally. *See Lyon*, 194 F.R.D. at 215.

And while factor (d) appears to come out neutral, it actually favors application of the law of each Plaintiff's home state because the "putative class members' residence is a contact of greater significance than defendant's principal place of business." *Id.*

> The plaintiff's domicil or residence, if he is a natural person, or the principal place of business, if plaintiff is a corporation, are contacts of substantial significance when the loss is pecuniary in its nature. . . . This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship . . . The domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148, cmt. i. Stated differently, even when all other things are equal, the domicil or residence of each Plaintiff is afforded more significant weight than the domicil or residence of Wendy's.

Plaintiffs do not cite a single case where a court has applied one state's consumer protection laws globally to a nationwide class.  Courts unanimously reject Plaintiffs' proposal.  *See In re Bridgestone/Firestone,* 288 F.3d 1012, 1017-18 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules."); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *41 (N.D. Ill. Mar. 31, 2017); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 150 (S.D.N.Y. 2008); *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2008 WL 2949265, at *7 (N.D. Cal. July 25, 2008).

Based on the Restatement factors, and in line with courts across the country, this Court is left with only one choice: the ODTPA "may not be uniformly applied to all putative class members' claims." *Lyon*, 194 F.R.D. at 215.  And because Plaintiffs only allege violation of the

ODTPA, Plaintiffs whose home states are outside of Ohio cannot assert any consumer protection claims.

## C.   Plaintiffs' Proposal To Globally Apply Ohio Law Does Not Facilitate Class Certification.

Plaintiffs suggest that globally applying Ohio law "will enable discovery and briefing[] with regard to Plaintiffs' motion for class certification . . . to be more focused and efficient."  Mot. at 1.  But Plaintiffs purport to represent a nationwide class, which implicates the laws of all fifty states, not just their sixteen home states.  For the reasons discussed above, Plaintiffs have failed to carry their burden of demonstrating that Ohio law can be applied to all named Plaintiffs' claims.  At class certification, Plaintiffs must demonstrate that variations in state laws do not "swamp any common issues and defeat predominance."  *In re Hyundai and Kia Fuel Econ. Litig.*, No. 15-56014, at p. 28 (9th Cir. Jan. 23, 2018) (quotations omitted).  Plaintiffs have not even attempted to show that Ohio law could be applied nationwide.  Nor could they, because even a cursory scan of the thirty-four additional states that are implicated by Plaintiffs' sweeping class definition reveals additional state law variations.  For example, New Jersey would likely not recognize the ELR in this case, *see Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 426 (5th Cir. 2013) (applying New Jersey law), and Maryland and Maine, like Arkansas and Louisiana, do not recognize the doctrine of negligence per se.  *Chevron U.S.A., Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 823 n.7 (D. Md. 2015); *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 904 (Me. 1996).  For this reason, Plaintiffs' proposed solution gets them no closer to class certification.

## V.   CONCLUSION

For the reasons set out above, the Court should deny Plaintiffs' Motion.  The Court should apply the law of each Plaintiff's home state.

Respectfully submitted this 19th day of February, 2018.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown
Donald M. Houser
**ALSTON & BIRD, LLP**
1201 W. Peachtree Street
Atlanta, GA 30309-3424
T: 404-881-7000
F: 404-881-7777
kristy.brown@alston.com
donald.houser@alston.com

Stephen S. Stallings
**STEPHEN S. STALLINGS, ESQUIRE**
The Osterling Building
228 Isabella St.
Pittsburgh, PA 15212
T: 412-322-7777
F: 412-322-7773
attorney@stevestallingslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2018, I electronically filed the foregoing document and attachments thereto with the Clerk of Court using the CM/ECF system, which will send notice of filing to the email addresses all counsel of record listed on the Electronic Mail Notice list.

The unredacted versions of materials filed under seal will be served on today's date on co-lead counsel of record for Plaintiffs via email and made available via secure FTP transfer.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown

*Counsel for Defendants*