# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIRST CHOICE FEDERAL CREDIT UNION, AOD FEDERAL CREDIT UNION, TECH CREDIT UNION, VERIDIAN CREDIT UNION, SOUTH FLORIDA EDUCATIONAL FEDERAL CREDIT UNION, PREFERRED CREDIT UNION, ALCOA COMMUNITY FEDERAL CREDIT UNION, ASSOCIATED CREDIT UNION, CENTRUE BANK, ENVISTA CREDIT UNION, FIRST NBC BANK, NAVIGATOR CREDIT UNION, THE SEYMOUR BANK, FINANCIAL HORIZONS CREDIT UNION, NUSENDA CREDIT UNION, GREATER CINCINNATI CREDIT UNION, KEMBA FINANCIAL CREDIT UNION, WRIGHT-PATT CREDIT UNION, and MEMBERS CHOICE CREDIT UNION, on Behalf of Themselves and All Others Similarly Situated,<br><br>and<br><br>CREDIT UNION NATIONAL ASSOCIATION, GEORGIA CREDIT UNION AFFILIATES, INDIANA CREDIT UNION LEAGUE, MICHIGAN CREDIT UNION LEAGUE, and OHIO CREDIT UNION LEAGUE,<br><br>               Plaintiffs,<br><br>  v.<br><br>THE WENDY'S COMPANY, WENDY'S RESTAURANTS, LLC, and WENDY'S INTERNATIONAL, LLC,<br><br>               Defendants. | Civil No. 2:16-cv-00506-NBF-MPK<br><br><br><br>**DECLARATION OF GARY F. LYNCH IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Gary F. Lynch, pursuant to 28 U.S.C. §1746, declare as follows:

1.  I am an attorney licensed in Pennsylvania and New York and have been admitted to practice before the Supreme Court of the United States and numerous federal appellate and district courts, including this Court. I have been appointed by this Court to serve as Co-Lead Counsel for Plaintiffs[1] and have been active in all aspects of this Litigation. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Declaration"). The information set forth in this Declaration is based upon my personal knowledge.

2.  I am a founding member of the law firm of Carlson Lynch Sweet Kilpela & Carpenter, LLP ("Carlson Lynch" or the "Firm").

3.  Carlson Lynch was co-founded in 2004 as Carlson Lynch LTD. The Firm was restructured and renamed Carlson Lynch Sweet & Kilpela, LLP in 2014. An additional named partner was added in 2016 and the firm was renamed Carlson Lynch Sweet Kilpela & Carpenter, LLP.

4.  Prior to my involvement in the Firm, I was a partner at Lynch & Kunkel LLP and Gary F. Lynch, P.C. I began my legal career as an associate at Reed Smith, LLP (formerly Reed Smith Shaw & McClay) ("Reed Smith") in 1989, after graduating from the University of Pittsburgh School of Law.

5.  Throughout my career (since leaving Reed Smith), my law practice has focused on representing plaintiffs in complex civil litigation. For the last several years, I have spent the bulk of my professional time representing individual and institutional plaintiffs in class action and

---

[1] All capitalized terms not defined herein have the same meaning as those defined in the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") filed contemporaneously herewith.

multi-district litigation throughout the country and am currently serving, or have served, as lead, co-lead, or in other leadership positions in numerous federal and state class actions and multi-district proceedings, including: *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-02800 (N.D. Ga.) (appointed co-lead MDL counsel on behalf of financial institution plaintiffs); *In re Home Depot Data Breach Litig.*, No. 1:14-md-2583 (N.D. Ga.) (same); *In re Target Stores Data Breach Litig.*, No. 0:14-md-02522 (D. Minn.) (appointed to overall executive committee in a large consolidated MDL stemming from the retailer's 2013 data breach, final approval granted to two settlements); *Dittman v. UPMC d/b/a The Univ. of Pittsburgh Med. Ctr.*, No. GD14-003285 (Pa. Ct. Com. Pl.) (lead counsel on behalf of plaintiffs after obtaining reversal in the Pennsylvania Supreme Court); *In re FedLoan Student Loan Servicing Litig.*, No. 2:18-md-02833-CDJ (E.D. Pa.) (appointed MDL co-lead counsel); and *Rodriguez v. CitiMortg., Inc.*, No. 1:11-cv-04718 (S.D.N.Y) (appointed tri-lead counsel).

6.  I make this Declaration in support of the proposed Settlement Agreement reached between the Parties after extensive arm's-length negotiation, a true and accurate copy of which is being filed concurrently herewith. Based upon my experience serving as lead counsel, and in other leadership positions, in class action litigation, it is my opinion that the proposed Settlement in this Litigation is fair, adequate, and reasonable, so as to satisfy the requirements for preliminary and, ultimately, final approval pursuant to Fed. R. Civ. P. 23. This opinion is shared by Erin Green Comite of Scott+Scott Attorneys at Law LLP ("Scott+Scott"), who serves as my Co-Lead Counsel for Plaintiffs. As previously set forth for the Court in connection with the application for the appointment of interim co-lead counsel, Ms. Comite also is well-experienced in class action litigation, having served in several leadership positions. (*See* ECF Nos. 15 at 9-10, 15-1, Ex. B).

7. The first complaint in this Litigation was filed on April 25, 2016. Thereafter, on July 22, 2016, Plaintiffs filed the operative Complaint, which asserts claims for negligence, negligence *per se*, violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Code §§4165.01, *et seq*., and declaratory and injunctive relief. (ECF No. 32). On August 22, 2016, Defendants moved to dismiss the Complaint (the "Motion to Dismiss"). (ECF No. 53). On February 13, 2017, Chief Magistrate Judge Kelly issued a Report and Recommendation, recommending that the Court deny the Motion to Dismiss. (ECF No. 80). On March 31, 2017, the Court adopted the Report and Recommendation and denied Wendy's Motion to Dismiss. (ECF No. 88).

8. Subsequent to the denial of the Motion to Dismiss, the Parties agreed to seek a resolution of the case through mediation, and on May 15, 2017, the Parties attended a full-day mediation session before the Honorable Edward Infante in San Francisco, California. The session did not result in a settlement, but the Parties agreed to return for another mediation session after conducting discovery.

9. The Parties engaged in significant discovery. In particular, Plaintiffs served extensive document requests in response to which Defendants produced millions of pages of documents, which Plaintiffs reviewed. Plaintiffs also deposed Defendants' corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). Additionally, Plaintiffs served subpoenas on several third parties, including the major payment card brands MasterCard and Visa, and reviewed thousands of pages that were produced in response. Similarly, Defendants served each Financial Institution Plaintiff with extensive document requests in response to which Plaintiffs produced thousands of pages of documents. Defendants deposed 16 corporate witnesses, which were designated by 15 of the Financial Institution Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6).

10. On January 19, 2018, Plaintiffs filed a motion seeking to apply Ohio law to Plaintiffs' claims on a nationwide basis (ECF No. 131), which Wendy's opposed. (ECF No. 139). On May 9, 2018, Chief Magistrate Judge Kelly issued a Report and Recommendation, recommending that the Court grant the Motion for Application of Ohio Law, as to the negligence and negligence *per se* claims, and deny it as to the ODTPA claim to the extent that any Plaintiffs not located in Ohio sought to assert that claim. (ECF No. 147 at 14). District Judge Nora Barry Fischer adopted the Report and Recommendation on June 6, 2018 (ECF No. 152), and shortly thereafter, the Parties were ordered to participate in another alternative dispute resolution process. (ECF No. 153). Since Judge Infante, the original mediator, had by then resumed his position as a Magistrate Judge for the Central District of California, the Parties arranged for the Honorable Diane M. Welsh (Ret.) to serve as the mediator. The Parties attended two full-day sessions before Judge Welsh, on August 29, 2018 and November 16, 2018, in Philadelphia, Pennsylvania. A settlement-in-principle was achieved shortly after the November 16 session.

11. Two representatives of the Financial Institution Plaintiffs, Susan Bradley of Plaintiff Members Choice Credit Union and Greg Slessor of Plaintiff Veridian Credit Union, attended the August 29, 2018 mediation. In support of their mediation positions, the Parties drafted detailed mediation briefs that explored the strengths and weaknesses of each side's case, including issues of liability, class certification, and proof of damages, and attached numerous exhibits. The Parties also participated in numerous direct discussions to facilitate and supplement the in-person mediation sessions before Judge Welsh.

12. The Parties did not negotiate the amount of Class Counsel's fees and expenses or Service Awards to the Settlement Class Representatives until after the key provisions of the Settlement, including the amount of relief to the Settlement Class, was agreed upon.

13. Under the Settlement Agreement, Defendants will create a non-reversionary Settlement Fund of $50 million in exchange for a release of all claims against Wendy's Franchisees arising from third-party criminal cyberattacks of certain of Wendys' independently owned and operated franchisee restaurants involving malware variants targeting customers' payment card information that Wendy's reported in 2016 (the "Data Breach"). The Settlement Fund will be used to pay: (1) disbursements to Settlement Class Members that file approved claims; (2) the Costs of Settlement Administration and any taxes due on the Settlement Fund account; (3) attorneys' fees, costs, and expenses to Class Counsel in amounts approved by the Court; and (4) Service Awards to the Settlement Class Representatives in amounts approved by the Court. Wendy's also will adopt or maintain certain reasonable safeguards to manage its data security risks. There are no other agreements made in connection with the Settlement. Each named-Plaintiff has consented to the submission of this proposed Settlement for the Court's approval.

14. Based upon discovery conducted by Plaintiffs, as well as information exchanged during the mediation process, Plaintiffs estimate that approximately 18 million payment cards were exposed in the Data Breach and, accordingly, will be included in the Settlement. These 18 million payment cards were issued by approximately 7,500 financial institutions. Under the proposed Distribution Plan that will govern payments from the Settlement Fund, Settlement Class Members that file an Approved Claim will receive a cash payment award per Claimed-On Card without having to submit documentation or prove their losses. The amount of the cash payment will depend on the total number of eligible payment cards for which an Approved Claim is submitted by Settlement Class Members, the Costs of Settlement Administration, taxes paid on the Settlement Fund, and the amount of attorneys' fees, costs, and expenses and Service Awards approved by the Court. By way of example, if valid claims are submitted for all eligible cards, it

is estimated that Settlement Class Members could receive approximately $2.00 per eligible payment card.  If, for example, 40% of eligible payment cards are submitted, then Settlement Class Members could receive approximately $4.80 per eligible payment card.

15.  In the context of data breach litigation pertaining to payment cards, this Settlement is unique in that it is the only nationwide class action settlement achieved in a case where financial institutions did not receive any compensation through the card brand recovery processes, such as Visa's Global Compromised Account Recovery ("GCAR") program and MasterCard's Account Data Compromise ("ADC") program, in connection with this Data Breach.  This Settlement represents the sole relief available to the Settlement Class Members as a result of the Data Breach.

16.  For purposes of effectuating individualized, direct Mail Notice, Class Counsel have arranged for Visa and MasterCard to identify each financial institution that issued an Alerted on Payment Card and to submit to the Settlement Administrator the legal address of such financial institutions.  Additionally, during the discovery and/or mediation process, Class Counsel obtained information sufficient to identify each financial institution that issued an Alerted on Payment Card for payment cards branded by American Express, Discover, and JCB.  Class Counsel will provide relevant contact information to the Settlement Administrator for financial institutions that issued American Express, Discover, and JCB Alerted on Payment Cards.  Class Counsel believe that the proposed Notice Plan represents the best practicable Notice to the Settlement Class Members.

17.  Class Counsel have reviewed the proposed Claim Form to be used by the Settlement Class Members to submit their claims.  The Claim Form is simple and straightforward and requires only the provision of very basic information.  Based upon my experience with the settlement of other class action data breach cases on behalf of financial institutions, Class Counsel believe that the simplicity of the Claim Form will increase participation from Settlement Class Members.

18.     The lawyers who were appointed by the Court to leadership positions on behalf of Plaintiffs are abundantly qualified and experienced to represent the Settlement Class, including specifically, Erin Green Comite, my Co-Lead Counsel. The background and firm profiles of both my firm and Ms. Comite's firm, Scott+Scott, as well as the profiles of the attorneys and firms appointed to Plaintiffs' executive committee, were previously provided to the Court in connection with the application for the appointment of interim lead counsel and Plaintiffs' executive committee. (ECF No. 15-1, Exs. A-G). These materials provide additional details regarding our qualifications to serve as Class Counsel, and the qualifications of the executive committee members to serve in their appointed roles.

19.     In this case, Ms. Comite and I, along with our respective law firms, Scott+Scott and Carlson Lynch, have done substantial work in vigorously pursuing the interests of our clients and the class they sought to represent throughout the Litigation. We were assisted in this effort by a host of additional law firms representing Plaintiffs, which, together with our firms, have extensive experience litigating complex and class actions and have demonstrated particular success in litigating data security breach class actions. We have aggressively litigated this action – briefing numerous substantive issues, achieving early resolution of the choice of law issue to set the stage for class certification, managing the review of millions pages of documents produced by Defendants and third parties, and drafting comprehensive mediation statements assessing the legal and factual strengths and weaknesses of the Litigation – and thus have adequate information on which to negotiate and evaluate this Settlement. The group of lawyers and law firms representing Plaintiffs in this matter are at the forefront of the fast-developing area of data breach law and litigation. Had the action not settled, counsel for Plaintiffs were prepared to devote substantial

additional time and effort pressing Plaintiffs' claims through class certification, trial, and any subsequent appeal.

20. The Settlement Class Representatives have demonstrated their adequacy in selecting well-qualified Class Counsel, monitoring the Litigation, and participating in discovery and the mediation process. The Settlement Class Representatives were highly cooperative in making themselves available for document production and/or deposition testimony. Additionally, each Settlement Class Representative actively communicated with Class Counsel for purposes of advising and consulting with regard to the consequences of the Data Breach and their resulting damages. These communications were crucial to the development of a workable damage model to facilitate the mediation process.

21. Based on our experience and expertise, Class Counsel believe that the settlement is fair, adequate, reasonable, an excellent result for the Settlement Class, and represents a desirable resolution of this Litigation. Generally speaking, in the still developing area of data breach litigation, there are many impediments to victory for a financial institution suffering harm in a data breach, as well as significant impediments to class certification. In this case, all of these uncertainties and impediments are present, as well as the additional issue presented by the fact that this Data Breach occurred in the point-of-sale environment of Defendants' independently owned and operated franchisees. Given these litigation risks, this Settlement is an excellent result in a complex, high-risk, hard-fought case that provides a substantial financial recovery for payment card issuers that suffered losses as a result of the Data Breach.

22. Ms. Comite and I solicited, received, and reviewed bids from four different settlement administration firms. Based on our review of the bids and credentials of these firms, and subject to this Court's approval, we believe the firm Analytics Consulting LLC ("Analytics")

8

is well-suited to serve as the Settlement Administrator and will provide administration services at a reasonable cost. Analytics is a well-known settlement administration firm that has successfully administered many class action settlements. I have worked with Analytics in other class action settlements and have always been satisfied with its work.

23. Because the Settlement represents a fair and reasonable recovery on behalf of the Plaintiffs and the proposed Settlement Class, Class Counsel believe that the Court should preliminarily approve the Settlement and direct Notice to be issued to the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct. This Declaration was executed on February 13, 2019, in Pittsburgh, Pennsylvania.

/s/ Gary F. Lynch
Gary F. Lynch

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

          */s/ Erin Green Comite*
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

*Co-lead Counsel and Proposed Class Counsel for Plaintiffs*