Exhibit 1 - Settlement Agreement

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), dated as of February 12, 2019, is made and entered into by and among the following Parties: (1) the Financial Institution Plaintiffs, for themselves and on behalf of the Settlement Class, and the Association Plaintiffs, by and through Erin Green Comite of Scott+Scott Attorneys at Law LLP and Gary F. Lynch of Carlson Lynch Sweet Kilpela & Carpenter, LLP ("Class Counsel"); and (2) The Wendy's Company, Wendy's Restaurants, LLC, and Wendy's International, LLC (collectively, "Wendy's"), by and through its counsel of record, Kristine M. Brown of Alston & Bird LLP, and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure.

## I.    RECITALS

A.     On April 25, 2016, First Choice Federal Credit Union filed an action against Wendy's in the United States District Court for the Western District of Pennsylvania after Wendy's reported third-party criminal cyberattacks of certain of its independently owned and operated franchisee restaurants involving malware variants targeting customers' payment card information.   Thereafter, a number of additional actions were filed by financial institutions against Wendy's in the United States District Court for the Western District of Pennsylvania.

B.     By order dated July 12, 2016, these actions were consolidated (ECF No. 20) and by order dated July 12, 2016, the Court appointed Erin Green Comite of Scott+Scott Attorneys at Law, LLP and Gary F. Lynch of Carlson Lynch Sweet Kilpela & Carpenter, LLP as interim co-lead class counsel.  (ECF No. 21).

C.     On July 22, 2016, the Financial Institution Plaintiffs and Association Plaintiffs (collectively, "Plaintiffs") filed the operative Consolidated Amended Class Action Complaint ("Complaint"), asserting claims for negligence, negligence per se, violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Code §§ 4165.01, *et seq*., and declaratory and injunctive relief.  (ECF No. 32).

D.     On August 22, 2016, Wendy's moved to dismiss the Complaint (the "Motion to Dismiss").  (ECF No. 53).  On February 13, 2017, Chief Magistrate Judge Kelly issued a Report and Recommendation recommending that the Court deny the Motion to Dismiss.  (ECF No. 80). On March 31, 2017, the Court adopted the Report and Recommendation and denied Wendy's Motion to Dismiss.  (ECF No. 88).

E.     The Parties engaged in significant motion practice and discovery.  In particular, Plaintiffs served Wendy's with document requests, and Wendy's produced millions of pages of documents, which Plaintiffs reviewed.  Plaintiffs also deposed Wendy's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6).  Additionally, Plaintiffs obtained and reviewed thousands of pages of documents from numerous third parties in response to subpoenas Plaintiffs served, including subpoenas served on the major card brands.

F.      Wendy's served the Financial Institution Plaintiffs with document requests, to which the Financial Institution Plaintiffs responded with the production of thousands of pages of responsive documents.  Wendy's also deposed 16 corporate witnesses of Financial Institution Plaintiffs with knowledge of facts relating to the Financial Institution Plaintiffs' response to the Data Breach, designated pursuant to Federal Rule of Civil Procedure 30(b)(6).

G.      On January 19, 2018, Plaintiffs filed a Motion for Application of Ohio Law, seeking to apply Ohio law to Plaintiffs' claims on a nationwide basis, which Wendy's opposed. (ECF No. 131).   On May 9, 2018, Chief Magistrate Judge Kelly issued a Report and Recommendation recommending that the Court grant the Motion for Application of Ohio Law as to the claims for negligence and negligence per se and deny it as to the ODTPA claim to the extent any Plaintiffs not located in Ohio sought to assert that claim.  (ECF No. 147).  On June 6, 2018, the Court adopted the Report and Recommendation.  (ECF No. 152).

H.      On August 27, 2018, Wendy's filed a Motion for Judgment on the Pleadings ("MJP"), seeking dismissal of Plaintiffs' claims for negligence and negligence per se on the grounds that they fail under Ohio law.  (ECF 163).  Plaintiffs have not responded to the MJP as the deadline for doing so has been extended by the Court in light of the mediation and settlement efforts.

I.      This Settlement resulted from good faith, arm's-length settlement negotiations, including one full-day mediation before the Honorable Edward Infante (Ret.) and two full-day mediation sessions before the Honorable Diane M. Welsh (Ret.).  The Parties also participated in numerous direct discussions about possible resolution of the Litigation.  The Parties did not discuss attorneys' fees, costs, and expenses prior to agreeing to the essential terms of the Settlement.

J.      Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in the Settlement and how best to serve the interests of the Settlement Class.  Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty, and cost of further prosecution of the Litigation, and the substantial benefits to be received by the Settlement Class pursuant to this Settlement, that a settlement with Wendy's on the terms set forth in this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

K.      Wendy's denies all material allegations of the Complaint.  Wendy's specifically disputes that it is liable in any way for the Data Breach and that Plaintiffs and putative class members are entitled to any relief from Wendy's.  Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Wendy's has agreed to settle the Litigation on the terms set forth in this Settlement, subject to Court approval.

L.      The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims.  The Parties intend this Settlement to bind the Plaintiffs, Wendy's, and all Settlement Class Members who do not timely and validly exclude themselves from the Settlement Class.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice, subject to preliminary and final Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.   **DEFINITIONS**

In addition to the terms defined at various points within this Settlement, the following defined terms apply throughout this Settlement:

1.      "Alerted on Payment Card" means any payment card (including debit and credit cards) that was identified as having been at risk as a result of the Data Breach in an alert or similar document by Visa, MasterCard, Discover, American Express, or JCB, including without limitation: (i) in an alert in the Visa US-2016-0183-PA series (e.g., US-2016-0183a-PA, US-2016-0183b-PA, US-2016-0183c-PA, US-2016-0183d-PA, US-2016-0183e-PA, US-2016-0183f-PA, US-2016-0183g-PA, US-2016-0183h-PA, US-2016-0183i-PA, US-2016-0183j-PA, US-2016-0183k-PA, US-2016-0183l-PA, US-2016-0183m-PA, US-2016-0183n-PA, US-2016-0183o-PA, US-2016-0183p-PA, US-2016-0183q-PA, US-2016-0183r-PA); (ii) in an alert in the MasterCard ADC0099-US-16-1 series and ADC001016-US-16 series (e.g., ADC001016-US-16-1, ADC001016-US-16-2, ADC001016-US-16-3, ADC001016-US-16-4, ADC001016-US-16-5, ADC001016-US-16-6, ADC001016-US-16-7, ADC001016-US-16-8, ADC001016-US-16-9, ADC001016-US-16-10, ADC001016-US-16-11, ADC001016-US-16-12, ADC001016-US-16-13, ADC0099-US-16-2, ADC0099-US-16-3, ADC0099-US-16-4, ADC0099-US-16-5); (iii) in an alert in the Discover DCA-USA-2016-6670, DCA-USA-2016-5283, and DCA-USA-2016-4698 series; (iv) in an alert or similar document by American Express similar to the foregoing Visa and MasterCard alerts; or (v) in an alert or similar document by JCB similar to the foregoing Visa and MasterCard alerts.

2.      "Approved Claim" means a claim for Settlement benefits made using a Claim Form found to be valid by and in an amount approved by the Settlement Administrator.

3.      "Association Plaintiffs" mean Credit Union National Association, Georgia Credit Union Affiliates, Indiana Credit Union League, Michigan Credit Union League, and Ohio Credit Union League.

4.      "Claims Administration" means the processing of Claim Forms received from Settlement Class Members and the payment of Approved Claims by the Settlement Administrator, as well as any other duties and obligations of the Settlement Administrator as set forth in the Settlement.

5.      "Claims Deadline" means the deadline by which Settlement Class Members must submit a claim for benefits under this Settlement.  The Claims Deadline shall be 180 days after the Notice Deadline.

6.      "Claim Form" shall mean the claim form attached as Attachment A to Exhibit 1 (including an electronic version thereof), or a claim form approved by the Court that is substantially similar to Attachment A to Exhibit 1.

7.      "Class Counsel" means the Court-appointed co-lead counsel in the Litigation:

> Erin Green Comite
> SCOTT+SCOTT ATTORNEYS AT LAW LLP
> 156 South Main Street
> Colchester, CT 06415

> Gary F. Lynch
> CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
> 1133 Penn Avenue, 5th Floor
> Pittsburgh, PA 15222

8.      "Complaint" means the operative Consolidated Amended Class Action Complaint (ECF No. 32), filed in the Litigation.

9.      "Compromised Cards" means any payment card (including debit and credit cards) that was used to make a purchase during the period of the Data Breach at any Wendy's franchisee restaurants impacted by the Data Breach.

10.      "Costs of Settlement Administration" means all actual costs associated with or arising from Claims Administration, the Notice Program, and providing notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).   The Costs of Settlement Administration shall be paid to the Settlement Administrator as set forth in this Settlement.

11.      "Court" means the United States District Court for the Western District of Pennsylvania.

12.      "Data Breach" means the third-party criminal cyberattacks of certain of Wendy's independently owned and operated franchisee restaurants involving malware variants targeting customers' payment card information that Wendy's reported in 2016, and that is the subject of the Litigation and Complaint.

13.      "Effective Date" means the first business day after which all of the following events have occurred:  (a) Class Counsel and Wendy's counsel have executed this Settlement; (b) the Court has entered the Final Approval Order and Judgment without material change to either the Parties' Settlement or agreed-upon proposed Final Approval Order and Judgment as described in this Settlement and attached as Exhibit 5; and (c) (i) the time for seeking rehearing, appellate, or other review of the Final Approval Order and Judgment has expired with no appeal, motion for rehearing, or motion for further review being filed, except specifically as described further in this definition, or (ii) the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.

4

The Effective Date shall not be altered, precluded, or delayed in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses or Service Awards in the amounts that Class Counsel requests.  Further, the Effective Date shall not be altered, precluded, or delayed in the event that an appeal is filed with the sole issues on appeal being the award of attorneys' fees, costs, and/or expenses to Class Counsel and/or Service Awards.  For purposes of the Effective Date, a "material change" includes, but is not limited to, the events set forth in Paragraph 73(a)-(e), as well as any modification to: (a) the entities included in the definition of Defendants' Released Persons or Plaintiffs' Released Person; (b) the definition of the Settlement Class; (c) the scope the claims released against the Defendants' Released Persons; (d) the scope of the claims released against Plaintiffs' Released Persons; (e) the scope of the Injunctive Relief agreed to by Wendy's as set forth in this Settlement; (f) the amount of the Settlement Fund; and/or (g) the requirements for Settlement Class Members to exclude themselves from the Settlement.

14.     "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards.  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

15.     "Final Approval Order and Judgment" means the order and judgment that the Court enters upon Final Approval and in the form of or materially in the form of the proposed Final Approval Order and Judgment attached as Exhibit 5.  In the event that the Court issues separate orders addressing the matters constituting Final Approval, then the Final Approval Order and Judgment includes all such orders.

16.     "Financial Institution Plaintiffs" means the following financial institutions named in the Complaint:  First Choice Federal Credit Union, AOD Federal Credit Union, Tech Credit Union, Veridian Credit Union, South Florida Educational Federal Credit Union, Preferred Credit Union, Alcoa Community Federal Credit Union, Associated Credit Union, Envista Credit Union, Federal Deposit Insurance Corporation as Receiver for First NBC Bank (*see* ECF No. 126), Navigator Credit Union, The Seymour Bank, Financial Horizons Credit Union, Nusenda Credit Union, Greater Cincinnati Credit Union, Kemba Financial Credit Union, Wright-Patt Credit Union, and Members Choice Credit Union.  For avoidance of doubt, the term does not include: Greenville Heritage Federal Credit Union, Centrue Bank, Align Credit Union, and North Jersey Federal Credit Union, each of which were voluntarily dismissed from the Litigation prior to the date of this Settlement.  (ECF Nos. 77, 105, 114, 120).

17.     "Litigation" means the consolidated action styled *First Choice Federal Credit Union v. The Wendy's Company*, Case No. 2:16-cv-506-NBF-MPK in the United States District Court for the Western District of Pennsylvania.

18.     "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

19.     "Notice Deadline" means the date by which the Settlement Administrator is required to send out Mail Notice, which shall be thirty (30) days after entry of the Preliminary Approval Order unless a different deadline is set by the Court.

20.     "Notice Program" means the notice plan and methods provided for in this Settlement and consists of (1) a direct mail notice to Settlement Class Members ("Mail Notice"); (2) Publication Notice (as described in more detail below); (3) notice posted on the Settlement Website; and (4) such other notice as is required by due process and Rule 23 of the Federal Rules of Civil Procedure.  The Notice Program shall be effected in substantially the manner provided for in this Settlement.

21.     "Objection Deadline" means 60 days after the Notice Deadline.

22.     "Opt-Out Deadline" means 60 days after the Notice Deadline.

23.     "Parties" means Wendy's, the Association Plaintiffs, and the Financial Institution Plaintiffs, individually and on behalf of the Settlement Class.

24.     "Plaintiffs" means the Association Plaintiffs and the Financial Institution Plaintiffs.

25.     "Plaintiffs' Released Persons" means Plaintiffs, their current and former parents, subsidiaries, affiliated companies, and divisions and Plaintiffs' counsel of record in the Litigation.

26.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and, among other things, ordering that notice be provided to the Settlement Class, and in the form of or materially in the form of the proposed Preliminary Approval Order attached as Exhibit 4.

27.     "Defendants' Released Persons" means (a) The Wendy's Company, Wendy's Restaurants, LLC, Wendy's International, LLC, and past and current Wendy's Franchisees, (b) each of its or their respective current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, and (c) the respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, reinsurers, shareholders, members, advisors, consultants, representatives, partners, joint venturers, and assigns of each of the entities and persons listed in sections (a) and (b) of this Paragraph.

28.     "Releasing Parties" means Plaintiffs and all Settlement Class Members who do not timely and validly exclude themselves from the Settlement, and each of these entities' current and former parents, subsidiaries, affiliated companies, divisions, as well as these entities' heirs, assigns, beneficiaries, and successors.

29.     "Service Award" means a payment of $7,500 to each Financial Institution Plaintiff that was deposed and $2,500 to each Financial Institution Plaintiff that was not deposed, subject to Court approval, in compensation for their involvement in this Litigation and service on

behalf of other financial institutions.  Any Service Awards will be paid out of the Settlement Fund.

30.     "Settlement Agreement" or "Settlement" means this settlement agreement and release, including exhibits hereto.

31.     "Settlement Administrator" means the entity to be selected by Class Counsel, subject to approval of Wendy's, which shall not be unreasonably withheld, and approved by the Court to effectuate the Notice Program and Claims Administration per the terms of this Settlement.

32.     "Settlement Class Members" or "Settlement Class" means all persons and entities that fall within the settlement class definition set forth in this Settlement.

33.     "Settlement Class Representatives" means the Financial Institution Plaintiffs.

34.     "Settlement Fund" means a non-reversionary fund in the amount of fifty million dollars ($50,000,000.00) to be used to pay claims of Settlement Class Members, all attorneys' fees, costs, and expenses approved by the Court, Costs of Settlement Administration, taxes, and Service Awards approved by the Court.

35.     "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following preliminary approval, but no later than the Notice Deadline, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Settlement, the Notice, the order preliminarily approving this Settlement, the Claim Form, the Complaint, and such other documents as Class Counsel and Wendy's agree to post or that the Court orders posted on the website.  These documents shall remain on the Settlement Website at least 60 days after the Effective Date.  The URL of the Settlement Website shall be agreed upon by Class Counsel and Wendy's.  Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website.  The Settlement Website shall not include any advertising and shall remain operational until at least 60 days after the Effective Date.

36.     "Wendy's" means The Wendy's Company, Wendy's Restaurants, LLC, and Wendy's International, LLC.

37.     "Wendy's Franchisees" means any individual or entity that has entered into an agreement with Wendy's or a current or past affiliate or related company of Wendy's to own or operate one or more Wendy's-branded restaurants, including franchise owners, guarantors, operators, partners, members, and shareholders.

## III.    SETTLEMENT CLASS

38.     For settlement purposes only, the Parties agree that the Court should certify the following class pursuant to Federal Rule of Civil Procedure 23(b)(3), defined as:

All banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued Alerted on Payment Cards. Excluded from the Settlement Class is the judge presiding over this matter and any members of her judicial staff, Wendy's, and persons who timely and validly request exclusion from the Settlement Class.

39.     For settlement purposes only, Class Counsel shall seek, and Wendy's shall not oppose, the appointment of Class Counsel as settlement class counsel and the appointment of the Financial Institution Plaintiffs as Settlement Class Representatives. Settlement Class Representatives will move for provisional certification of the Settlement Class for settlement purposes only contemporaneously with their motion for preliminary approval of the Settlement. Wendy's agrees not to contest provisional certification of the Settlement Class for settlement purposes only.

## IV.     SETTLEMENT CONSIDERATION

40.     <u>Settlement Fund.</u>  Wendy's agrees to pay fifty million dollars ($50,000,000.00), inclusive of attorneys' fees, costs, and expenses, Service Awards, taxes, and the Costs of Settlement Administration, into a fund to compensate Settlement Class Members on the following terms:

     a.  Within forty-five (45) calendar days of the Effective Date, Wendy's shall cause to be deposited the sum of fifty million dollars ($50,000,000.00) into an escrow account established by the Settlement Administrator to create the Settlement Fund, less the Costs of Settlement Administration incurred by this date. Class Counsel and/or the Settlement Administrator shall timely furnish to Wendy's any required account information, wiring instructions or necessary forms before the payment is made. The Settlement Fund shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Fund and the monies deposited into the Settlement Fund, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-l. Wendy's shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Fund pursuant to Treas. Reg. § 1.468B- l. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

     b.  Disbursements from the Settlement Fund will be made to (i) pay any taxes due on the Settlement Fund; (ii) pay all attorneys' fees, costs, and expenses approved by the Court; (iii) pay Service Awards approved by the Court; (iii) pay the Costs of Settlement Administration; and (iv) pay Settlement Class Members as set forth in the Distribution Plan attached hereto as Exhibit 1. The Parties intend that, after these payments and disbursements are made,

there will be no funds remaining.   Nonetheless, to the extent any funds remain, no portion of the Settlement Fund will be returned to Wendy's.

41.    Injunctive Relief.   In partial consideration of the full settlement and release of all Released Claims against Defendants' Released Persons, Wendy's, subject to Board approval, agrees to adopt and/or maintain the following measures with respect to its Company-owned U.S. restaurants and systems (unless otherwise specified below) (the "Measures"), within thirty (30) days of issuance of the Final Approval Order and Judgment, except as set forth below.

a.    Wendy's will continue to design and implement reasonable safeguards to manage its data security risks, including by: continuing to maintain and periodically re-evaluate its Information Security Policy and Incident Response Plan or similar document; continuing to maintain monitoring for indicators of compromise on Wendy's computer network endpoints, to the extent required by Payment Card Industry Data Security Standards ("PCI DSS"); continuing to deploy anti-virus protections on Wendy's-owned store-based IT assets, to the extent required by PCI DSS; continuing to reasonably segment Wendy's network topology; continuing to conduct regular penetration testing.

b.    Wendy's will either (a) continue to maintain Wendy's Technology, LLC ("WeTech") or a similar entity, which will offer to Wendy's Franchisees certain Foundational Security Services, as may be amended from time to time in the WeTech Products and Services Agreement or any similar document or (b) require Wendy's Franchisees to use a Wendy's-approved third-party vendor(s) for similar services; and

c.    Wendy's will continue to maintain and update as needed the information security standards in its Franchisee Operations Manual or a similar document that is distributed to Wendy's Franchisees, and the manual or other similar document will continue to include information regarding the Wendy's Franchisees' independent obligations to comply with PCI DSS pursuant to the card brand rules.

42.    The Measures set forth above will be materially maintained for at least two (2) years following the Effective Date, subject to any of the following: (a) a determination by a majority of the non-management directors that the Measure is no longer in the best interest of Wendy's, including, but not limited to, due to circumstances making the Measure no longer applicable, feasible, or available on commercially reasonable terms; (b) a determination by the Wendy's officer designated as the head of Wendy's cybersecurity program and approved by a majority of the members of the Board's Technology Committee that the Measure is no longer in the best interest of Wendy's, including, but not limited to, due to circumstances making the Measure no longer applicable, feasible, or available on commercially reasonable terms; or (c) modifications which Wendy's reasonably believes are required by applicable law or regulation.

## V.    PRELIMINARY APPROVAL

43.    Upon execution of this Settlement, Class Counsel shall promptly move the Court for an order granting preliminary approval of this Settlement, substantially in the form of Exhibit 4. The motion for preliminary approval shall request that the Court: (1) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Settlement Administrator, Notice Program set forth herein, the form and content of the Notice, and the Claim Form; (4) approve the procedures set forth in this Settlement for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay all proceedings in the Litigation unrelated to the Settlement pending Final Approval of the Settlement; (6) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning any Released Claims; (7) appoint Class Counsel and Settlement Class Representatives; and (8) schedule a Final Approval hearing at a date that provides sufficient time for the deadlines contemplated by this Settlement and that is convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses and Service Awards ("Final Approval Hearing").

44.    Within ten (10) days of the filing of the motion for preliminary approval, Wendy's shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under CAFA.

## VI.    SETTLEMENT ADMINISTRATOR

45.    The Settlement Administrator shall administer various aspects of the Settlement and perform such other functions as are specified for the Settlement Administrator elsewhere in this Settlement, including, but not limited to, overseeing administration of the Settlement Fund; providing Notice to Settlement Class Members as described in this Settlement; effecting Publication Notice; establishing and operating the Settlement Website and a toll-free number; administering the claims processes; and distributing cash payments according to the processes and criteria established by this Settlement.

46.    The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Settlement, include:

      a.   Implementing the Notice Program required by this Settlement;

      b.   Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

      c.   Establishing and maintaining the Settlement Website;

d.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement Agreement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

e.  Responding to any mailed Settlement Class Member inquiries;

f.  Processing all written notifications of exclusion from the Settlement Class and providing deficiency notices as set forth herein;

g.  Providing weekly reports and, no later than fifteen (15) days after the Opt-Out Deadline, a final report to Class Counsel and Wendy's, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and Wendy's counsel;

h.  In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and validly provided written notification of exclusion from the Settlement Class;

i.  Reviewing, determining the validity of, and responding to all claims submitted by Settlement Class Members, pursuant to criteria established by this Settlement Agreement;

j.  After the Effective Date, processing and transmitting distributions to Settlement Class Members that submitted Approved Claims;

k.  Providing weekly reports and a final report to Class Counsel and Wendy's that summarize the number of claims since the prior reporting period, the total number of claims received to date, the number of any claims approved and denied since the prior reporting period, the total number of claims approved and denied to date, and other pertinent information as requested by Class Counsel and Wendy's counsel; and

l.  Performing any function related to Claims Administration at the agreed-upon instruction of the Parties, including, but not limited to, verifying that cash payments have been distributed in accordance with this Settlement.

47.  Class Counsel shall have the right, to be exercised in their sole discretion, but not the obligation, to advise the Settlement Administrator to waive what Class Counsel reasonably deems to be formal or technical defects in any Claim Forms submitted, including, without limitation, failure to submit a Claim Form by the Claims Deadline, in the interests of achieving substantial justice.

## VII.   NOTICE, OPT-OUTS, AND OBJECTIONS

48.    Upon preliminary approval of the Settlement, at the direction of Class Counsel, the Settlement Administrator will begin implementing the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.  The Notice will include, among other information:  a description of the material terms of the Settlement; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Settlement and other related documents and information.

49.    The Notice Program has three components: (1) Mail Notice; (2) Publication Notice; and (3) Notice on the Settlement Website.  The Notice Program is to be implemented as follows:

    a.  Within fourteen (14) days after entry of the Preliminary Approval Order, Class Counsel will provide, or will cause to be provided, available contact information to the Settlement Administrator for banks, credit unions, and other financial institutions that are potentially Settlement Class Members. Based upon information obtained from Class Counsel and from other reasonably available sources, the Settlement Administrator will prepare a final list of potential Settlement Class Members to which Notice will be issued.

    b.  Mail Notice will be sent to those on the final list by the Notice Deadline.  The Mail Notice shall consist of the long-form notice in the form attached hereto as Exhibit 2 and Claim Form.  For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated.  For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified.  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.

    c.  The Settlement Administrator will cause to be published in the digital edition of the ABA Banking Journal and/or other publications typically read by bank and credit union executives the summary notice attached hereto as Exhibit 3. The publications in which the notice will appear and the dates and frequency of the Publication Notice will be determined by the Settlement Administrator in consultation with the Parties.  The Settlement Administrator may also utilize other means of Publication Notice in consultation with Parties.

    d.  The Settlement Administrator will send out at least one reminder mailing during the claims period to those Settlement Class Members that have not yet filed claims.

e.   The Settlement Administrator will establish a toll-free number to respond to inquiries from Settlement Class Members by the Notice Deadline.

f.   By the Notice Deadline, the Settlement Administrator will create and maintain the Settlement Website, which will contain the information and documents required by this Settlement.  The Settlement Website will be configured so that Settlement Class Members may file claims electronically.

g.   The Parties agree to provide any additional notice that the Court determines is necessary to meet the requirements of due process or Rule 23 of the Federal Rules of Civil Procedure, the cost of which shall be deemed part of the Costs of Settlement Administration and paid from the Settlement Fund as provided for in the Settlement.

50.     The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement by notifying in writing the Settlement Administrator, Class Counsel, and Wendy's of their intent to exclude themselves from the Settlement.  The notice shall be sent via first class postage pre-paid United States mail to the addresses provided in the Notice.   Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice.  The written notification must include the name of this Litigation (*First Choice Federal Credit Union v. The Wendy's Company*, Case No. 2:16-cv-00506-NBF-MPK (W.D. Pa.)); the full name, address, and telephone number of the Settlement Class Member; the name, address, email address, telephone number, position, and signature of the individual who is acting on behalf of the Settlement Class Member; the words "Request for Exclusion" at the top of the document or a statement in the body of the document requesting exclusion from the Settlement; and the total number of payment cards issued by the Settlement Class Member that were identified as having been at risk as a result of the Data Breach in any alerts or similar documents by Visa, MasterCard, Discover, American Express, and JCB.  The Settlement Administrator shall provide the Parties with copies of all opt-out notifications on a weekly basis, and a final list of all who have timely and validly excluded themselves from the Settlement, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing.  Any Settlement Class Member who does not provide a timely notice or who does not provide all information required by this Settlement to exclude itself shall be bound by the terms of the Settlement, including all releases in the Settlement.

51.     In the event that a Settlement Class Member purports to provide notice of its intention to opt-out of the Settlement but fails to provide all of the information set forth above, including specifically the identification of the number of payment cards issued by the Settlement Class Member that were identified as having been at risk as a result of the Data Breach in an alert or similar document by Visa, MasterCard, Discover, American Express, and JCB, the Settlement Administrator shall, within five (5) days of receiving the deficient notice, send the Settlement Class Member a deficiency notice.  The deficiency notice shall inform the Settlement Class Member that its attempt to opt out is deficient, invalid, and without legal effect.  The deficiency notice shall be sent by the Settlement Administrator via email and, if email is not feasible, then by USPS Priority Express mail.  The deficiency notice shall also inform the Settlement Class Member that it must re-submit to an email address to be provided by the Claims

Administrator a valid notice requesting exclusion that includes all of the required information, including but not limited to the number of payment cards identified as at risk, no later than ten (10) days from the date of the deficiency notice in order for its opt out to be effective.  If the Settlement Class Member fails to provide all of the required information on or before that deadline, then its attempt to opt out shall be invalid and have no legal effect, and the Settlement Class Member shall be bound by the Settlement, including the releases.

52.    The Notice shall also include a procedure for Settlement Class Members to object to the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses, and/or the application for Service Awards.  Objections to the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses, and/or to the application for Service Awards must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Wendy's counsel.  For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Wendy's counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice.  For an objection to be considered by the Court, the objection must also set forth:

    a.  the name of the Litigation (*First Choice Federal Credit Union v. The Wendy's Company*, Case No. 2:16-cv-00506-NBF-MPK (W.D. Pa.));

    b.  the full name of the objector and the full name, address, email address, and telephone number of the person acting on its behalf;

    c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

    d.  whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;

    e.  all grounds for the objection stated with specificity, accompanied by any legal support for the objection;

    f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement, Class Counsel's request for attorney's fees, costs, and expenses, or the application for Service Awards;

    g.  the identity of all representatives (including counsel representing the objector) who will appear at the Final Approval Hearing;

    h.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's

prior such objections that were issued by the trial and appellate courts in each listed case;

i.  the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

j.  if the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include: (i) a description of the attorney's legal background and prior experience in connection with class action litigation; (ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate.

k.  any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

l.  a description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;

m.  a statement indicating whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

n.  the objector's signature on the written objection (an attorney's signature is not sufficient).

53.  In addition, any Settlement Class Member that objects to the proposed Settlement must make itself available to be deposed regarding the grounds for its objection and must provide along with its objection the dates when the objector will be available to be deposed during the period from when the objection is filed through the date five (5) days before the Final Approval Hearing.

54.  Any Settlement Class Member who both objects to the Settlement Agreement and opts out will be deemed to have opted out and the objection shall be deemed null and void.

55.     The Mail Notice shall be sent or issued by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable and any reminder mail notices to be sent during the claims period.

56.     At least thirty-five (35) days before the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Wendy's with one or more affidavits confirming that the Notice Program was completed in accordance with the Parties' instructions and the Court's approval.  Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement Agreement.

57.     Wendy's will pay all Costs of Settlement Administration incurred by the Settlement Administrator up to the date the Settlement Fund is funded.  All Costs of Settlement Administration incurred by Wendy's up to the date the Settlement Fund is funded shall be credited against the amount Wendy's is to pay or cause to be paid into the Settlement Fund. After the Settlement Fund is funded, all Costs of Settlement Administration shall be paid directly from the Settlement Fund.

58.     In the event that the Settlement is not approved or if Wendy's elects to terminate the Settlement and a Settlement Fund is not created, Wendy's will not be entitled to a return of any of the monies it has paid to the Settlement Administrator for the Costs of Settlement Administration up to that point. Class Counsel and the Settlement Administrator will take reasonable steps to ensure that no further Costs of Settlement Administration are incurred thereafter without Wendy's express written approval.

## VIII.   <u>FINAL APPROVAL ORDER AND JUDGMENT</u>

59.     Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur, which shall be sufficiently far in advance to allow for the deadlines contemplated by this Settlement.  The Final Approval Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715.  By no later than 30 days prior to the Final Approval Hearing, Class Counsel shall file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses and for Service Awards.  Objectors, if any, shall file any response to Class Counsel's motions no later than 17 days prior to the Final Approval Hearing.  By no later than 10 days prior to the Final Approval Hearing, responses shall be filed, if any, to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards shall be filed.  At the Final Approval Hearing, the Court will consider the motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards.  In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who objects to the Settlement, Class Counsel's application for attorneys' fees, costs, expenses, and/or Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in this Settlement.

60.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and Judgment granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and Service Awards.  The proposed Final Approval Order and Judgment that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and Wendy's as set forth in Exhibit 5.  Such proposed Final Approval Order and Judgment shall, among other things:

    a.   Determine that the Settlement is fair, adequate, and reasonable;

    b.   Finally certify the Settlement Class for settlement purposes only;

    c.   Determine that the notice provided satisfied Federal Rule of Civil Procedure 23 and Due Process requirements;

    d.   Dismiss all claims in the Complaint and the Litigation with prejudice;

    e.   Bar and enjoin the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment;

    f.   Release and forever discharge Wendy's and Defendants' Released Persons from the Released Claims and release Plaintiffs' Released Persons as provided in this Settlement Agreement; and

    g.   Reserve the Court's continuing and exclusive jurisdiction over Wendy's and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Settlement in accordance with its terms.

## IX.    **RELEASES**

61.     As of the Effective Date, the Releasing Parties, each on behalf of itself and any predecessors, successors, or assigns, shall automatically be deemed to have fully, completely, finally, irrevocably, and forever released and discharged Defendants' Released Persons of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown (including Unknown Claims), existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Data Breach, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) Wendy's information security policies and practices; (2) the allegations, facts, and/or circumstances described in the Litigation and/or Complaint; (3) Wendy's response to and notices about the Data Breach; (4) the fraudulent use of any Compromised Cards or Alerted on Payment Cards; (5) the cancellation and reissuance of any Compromised Cards or Alerted on Payment Cards; and (6) any expenses incurred investigating, responding to, or mitigating potential

damage from the theft or illegal use of Compromised Cards or Alerted on Payment Cards or information relating to such cards (the "Released Claims").

62.     For the avoidance of doubt, the Released Claims include, without limitation, any claims, causes of actions, remedies, or damages that were or could have been asserted in the Litigation, and also include, without limitation, any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 *et seq*., California Civil Code § 1750 *et seq*., California Civil Code § 1798.80 *et seq*., California Civil Code § 56.10 *et seq*., and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

63.     As of the Effective Date, Defendants' Released Persons will be deemed to have completely released and forever discharged the Releasing Parties and Plaintiffs' Released Persons from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Litigation.  For the avoidance of doubt, Defendants' Released Persons' release as set forth in this Paragraph 63 does not include entities that do not meet the definition of either Releasing Parties or Plaintiffs' Released Persons.  For the further avoidance of doubt, Defendants' Released Persons' release as set forth in this Paragraph 63 does not include WAND Corporation, Trustwave, Trustwave Holdings, Inc., NCR, or DUMAC Business Systems, Inc.

64.     "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Settlement Class Representatives, does not know or suspect to exist in its favor at the time of the release of the Defendants' Released Persons that, if known by it, might have affected its settlement with, and release of, the Defendants' Released Persons, or might have affected its decision not to object to and/or participate in this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Settlement Class Representatives expressly shall have, and each of the other Settlement

Class Members shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Settlement Class Members, including the Settlement Class Representatives, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Settlement Class Representatives expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

65.     As of the Effective Date, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in this Settlement in any proceeding against any of the Defendants' Released Persons or based on any actions taken by any of the Defendants' Released Persons that are authorized or required by this Settlement or by the Final Approval Order and Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding or action asserting claims released by this Settlement.

## X.    <u>ATTORNEYS' FEES, COSTS, EXPENSES AND SERVICE AWARDS</u>

66.     <u>Service Awards</u>. Class Counsel will ask the Court to approve, and Wendy's will not oppose, Service Awards of $7,500 to each of the fifteen (15) Financial Institution Plaintiffs that were deposed and $2,500 to each of the remaining three (3) Financial Institution Plaintiffs that were not deposed to compensate them their efforts in the Litigation and commitment on behalf of the Settlement Class.  Any Service Awards approved by the Court will be paid from the Settlement Fund.  Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Settlement.

67.    <u>Attorneys' Fees, Costs, and Expenses</u>.  Class Counsel will request 30% of the gross Settlement Fund, including any interest earned thereon, from the Court for their attorneys' fees and will additionally request reimbursement of their reasonable costs and expenses from the Settlement Fund.  Wendy's agrees not to oppose Class Counsel's request for attorneys' fees and reimbursement of reasonable costs and expenses from the Settlement Fund.  For the avoidance of doubt, all attorneys' fees (including any interest earned thereon), costs, and expenses, and Service Awards approved by the Court shall be paid from the Settlement Fund.

68.    Within fifty-five (55) days of the Effective Date, the Settlement Administrator shall wire Court approved attorneys' fees, costs, and expenses and Service Awards into an account designate by Class Counsel.

69.    Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees and costs and expenses awarded by the Court among Plaintiffs' counsel of record.

70.    In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses and/or Service Awards in the amounts requested by Class Counsel, the remaining provisions of this Settlement shall remain in full force and effect.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning solely the amount(s) of attorneys' fees, costs, and expenses and/or Service Awards shall constitute grounds for cancellation or termination of this Settlement.

## XI.    <u>TERMINATION</u>

71.    Wendy's shall have the sole discretion to terminate the Settlement Agreement if Settlement Class Members representing a certain number of Alerted on Payment Cards elect to opt out of the Settlement Class.  That number is separately agreed to by the Parties and will be submitted to the Court for *in camera* review if requested.  If Wendy's elects to terminate the Settlement Agreement, it must notify Class Counsel that it intends to pursue that right pursuant to this provision, if any such right exists, no later than thirty-five (35) days after the Opt-Out Deadline.

72.    If the requirements to terminate the Settlement Agreement set forth in Paragraph 71 are met and Wendy's provides Class Counsel with notice of its intent to terminate the Settlement Agreement, Class Counsel will have 60 days from the date of such notice for the purposes of communicating with any opt-outs to attempt to have such Settlement Class Members withdraw their opt-outs and remain in the Settlement Class.  The Parties will use their best efforts to resolve any issues of Settlement Class Members who have elected to opt-out, and Wendy's agrees to cooperate fully with respect to the handling of opt-outs, including communicating to any would-be opt-outs at Class Counsel's request, to attempt to have such Settlement Class Members revoke their opt-outs and remain in the Settlement Class. Specifically, at the request of Class Counsel, Wendy's agrees to write a pre-prepared letter, subject to approval of Class Counsel, requesting any would-be opt-out to remain in the Settlement Class.  This letter will be used only after a Settlement Class Member submits an opt-out notice.

73.     This Settlement Agreement may be terminated by either Settlement Class Representatives or Wendy's by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen (14) days (or such longer time as may be agreed between Class Counsel and Wendy's) after any of the following occurrences:

    a.  Class Counsel and Wendy's agree to termination before the Effective Date;

    b.  The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve, the Settlement;

    c.  An appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

    d.  The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, the Preliminary Approval Order, the proposed Final Approval Order and Judgment, the Final Approval Order and Judgment, or the Settlement; or

    e.  The Effective Date does not occur.

74.     In the event of a termination as provided for in the Settlement, the Settlement shall be considered null and void; all of the Parties' obligations under the Settlement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Litigation as if the Parties had not entered into this Settlement.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including all defenses to class certification.  Further, if Wendy's elects to terminate the Settlement pursuant to Paragraph 71  and the case goes back into litigation, Wendy's will not oppose, and will join in Plaintiffs' request for, the immediate opening of full discovery.  Wendy's also will agree to return to mediation.

## XII.   NO ADMISSION OF LIABILITY

75.     Wendy's disputes the claims alleged in the Litigation and does not by this Settlement or otherwise admit any liability or wrongdoing of any kind. Wendy's has agreed to enter into this Settlement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Litigation.

76.     Class Counsel and Settlement Class Representatives believe that the claims asserted in the Litigation have merit, and they have examined and considered the benefits to be obtained under the Settlement, the risks associated with the continued prosecution of this complex, costly, and time-consuming Litigation, and the likelihood of success on the merits of the Litigation.  Class Counsel and Settlement Class Representatives have concluded that the

Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

77.     The Parties understand and acknowledge that this Settlement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Settlement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

78.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Defendants' Released Persons; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Defendants' Released Persons, in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## XIII.  **MISCELLANEOUS**

79.     In no event shall the total amount of Approved Claims, attorneys' fees, costs, and expenses, Service Awards, Costs of Settlement Administration, taxes, and any other fees, costs, expenses, payments, or any other obligations incurred by Wendy's under this Settlement exceed the Settlement Fund.

80.     <u>Confidentiality</u>.  Plaintiffs' counsel and the Parties agree that they will not make the Settlement public until the Settlement Agreement is filed with the Court for preliminary approval.  Plaintiffs' counsel and Wendy's will work together in good faith to jointly agree to language regarding the initial public announcement/communication concerning the Settlement.  Plaintiffs' counsel and Wendy's will also work together in good faith to jointly agree to any public statements after the initial public announcement / communication, including responding to any inquiries from the media concerning the Litigation and Settlement and posting to publicly available websites, unless otherwise agreed by the Parties.  The limitations in this Paragraph 80 shall not apply to:  (1) communications between Plaintiffs' counsel and their clients (including Settlement Class Members); (2) any SEC or other contractual or legal disclosure obligations that Wendy's may have; (3) Wendy's communications with its employees or Wendy's Franchisees, including in franchisee disclosure documents as it deemed necessary and appropriate; (4) the ability of the Parties to communicate with the payment card brands about the Settlement, in order to facilitate notice to the class, as provided in the Settlement Agreement; (5) the ability of Wendy's to notify its insurers about the Settlement; (6) the ability of the Parties to communicate with necessary third parties for the purpose of facilitating the administration of the Settlement.

81.     <u>Settlement Fund Escrow Bank</u>.  Class Counsel, subject to Wendy's approval which shall not be unreasonably withheld, shall select the Settlement Fund Escrow account and the Settlement Fund Escrow Bank.  The Settlement Fund Escrow Bank shall invest the

Settlement Fund exclusively in an interest-bearing account or accounts where the principle will not decrease and is fully insured by the United States Government or an agency thereof, including certificates of deposit, a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Settlement Fund Escrow Bank shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Wendy's shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Settlement Fund Escrow Bank.

82.   <u>Singular and Plurals</u>. As used in this Settlement, all references to the plural shall also mean the singular and all references to the singular shall also mean the plural whenever the context so indicates.

83.   <u>Binding Effect</u>. This Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Defendants' Released Persons.

84.   <u>Settlement Class Member Communications</u>.   Other than at Class Counsel's request, Wendy's shall not communicate with any Settlement Class Member during the pendency of the settlement approval process regarding this Litigation, the decision to opt-out, or relief being awarded in the Settlement, and represents that it has not previously so communicated with any Settlement Class Members regarding these topics.   For purposes of clarity, this provision restricts only communications regarding the Litigation and/or Settlement; it does not purport to limit any other communications.

85.   <u>Cooperation of Parties</u>. The Parties to this Settlement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the settlement described in this Settlement.   Nothing in this provision is intended to limit any Party's right to terminate the Settlement in accordance with its terms.

86.   <u>Obligation To Meet And Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Settlement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

87.   <u>Entire Agreement</u>. This Settlement (along with any Exhibits attached and the agreements referenced in Paragraphs 71 and 80) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.   No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

88.   <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Settlement and the text of the paragraphs of this Settlement shall be resolved in favor of the text.

89.   <u>Governing Law</u>. The Settlement shall be construed in accordance with, and be governed by, the laws of the State of Ohio, without regard to the principles thereof regarding choice of law.

90.   Counterparts. This Settlement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

91.   Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Settlement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of Settlement and shall retain jurisdiction for the purpose of enforcing all terms of the Settlement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administration.  As part of its agreement to render services in connection with this Settlement Agreement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

92.   Notices. All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

> Erin Green Comite
> SCOTT+SCOTT ATTORNEYS AT LAW LLP
> 156 South Main Street
> Colchester, CT 06415
> ecomite@scott-scott.com
>
> Gary F. Lynch
> CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
> 1133 Penn Avenue, 5th Floor
> Pittsburgh, PA 15222
> glynch@carlsonlynch.com

All notices to Wendy's provided for herein, shall be sent by overnight mail and email to:

> Kristine M. Brown
> Donald M. Houser
> ALSTON & BIRD LLP
> 1201 West Peachtree Street
> Atlanta, GA 30309
> kristy.brown@alston.com
> donald.houser@alston.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

93.     <u>Authority</u>. Any person executing this Settlement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Settlement to all of the terms and provisions of this Settlement.

94.     <u>No Construction Against Drafter</u>. This Settlement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Settlement.

Date: February 12, 2019

_____
Erin Green Comite
SCOTT+SCOTT ATTORNEYS
AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415

_____
Kristine M. Brown
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309

*Counsel for Wendy's*

_____
Gary F. Lynch
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburg, PA 15222

*Counsel for Plaintiffs and Settlement Class*

Date: February 12, 2019

---

Erin Green Comite
SCOTT+SCOTT ATTORNEYS
AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415

---

Kristine M. Brown
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309

*Counsel for Wendy's*

---

Gary F. Lynch
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburg, PA 15222

*Counsel for Plaintiffs and Settlement Class*

Date: February 12, 2019

_____

Erin Green Comite
SCOTT+SCOTT ATTORNEYS
AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415

_Kristine M. Brown_

Kristine M. Brown
ALSTON & BIRD LLP
1201 West Peachtree Street, NE
Atlanta, GA 30309

*Counsel for Wendy's*

_____

Gary F. Lynch
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburg, PA 15222

*Counsel for Plaintiffs and the Settlement Class*

# EXHIBIT 1

**Exhibit 1 to the Settlement Agreement**

**Distribution Plan for the $50,000,000 Settlement Fund**

**1.      Definitions.** Terms defined in the Settlement Agreement to which this document is an exhibit are incorporated herein by reference. In addition, as used herein, the terms set forth in this section in boldface type will have the meaning described below.  Additional terms are defined at various points in this Distribution Plan.

      1.1    **Claim Referee.** This term means a person selected by the Parties to handle certain disputes relating to claims.  A Claim Referee need not be selected or approved until and unless a dispute arises that cannot otherwise be resolved pursuant to the procedure set forth in Section 5 below.  Any amounts paid to a Claim Referee will be made from the Settlement Fund.

      1.2    **Claimed-On Card.** An Alerted on Payment Card that was issued by a Settlement Class Member and for which the Settlement Class Member seeks compensation under the Settlement.

      1.3    **Disputed Claim.** This term has the meaning set forth in Section 5.1.

      1.4    **Distribution Fund.** This term has the meaning set forth in Section 4.1

      1.5    **Cash Payment Award.** This term has the meaning set forth in Section 2.1.

      1.6    **Supplemental Remainder.** This term has the meaning set forth in Section 4.4.

**2.      Claims.** All Settlement Class Members that submit a valid, properly completed Claim Form on or before the Claims Deadline are eligible to receive a Cash Payment Award without proof of documentation.

      2.1    **Cash Payment Awards.** A Settlement Class Member can seek a cash payment based on the number of Alerted on Payment Cards that the Settlement Class Member issued.  To be eligible to receive a Cash Payment Award, a Settlement Class Member must timely (*i.e.*, on or before the Claims Deadline) submit a valid Claim Form and properly complete the form, providing all requested information. Settlement Class Members do not need to submit any documentation in order to be eligible to receive a Cash Payment Award.  Each Settlement Class Member that timely submits a valid Claim Form and properly completes the form will be eligible for (1) a payment per Claimed-On Card issued by such Settlement Class Member ("Cash Payment Award"); and (2) a possible additional supplemental payment if funds remain in the Settlement Fund after (a) any taxes have been paid; (b) Costs of Settlement Administration have been paid; and (c) attorneys' fees, expenses, costs, and Service Awards have been paid; and (d) all Approved Claims have been paid.  The amount actually paid to Settlement Class Members per Claimed-On Card will depend upon the number of claims received as well as

the actual amount of taxes, Costs of Settlement Administration, and attorneys' fees, expenses, costs, and Service Awards.

2.2   **Claim Form.** The Claim Form to be used by Settlement Class Members seeking Cash Payment Awards is attached as Attachment A.  To receive a Cash Payment Award, Settlement Class Members must complete, sign, and timely submit the Claim Form.

## 3.   Claim Validation Process

3.1   All Claim Forms must be submitted in the manner and by the Claims Deadline specified in the Settlement.

3.2   The Settlement Administrator will begin evaluating timely Claim Forms on or after the Effective Date.   The Settlement Administrator may require supplementation of a Claim Form or additional information necessary to validate or audit a claim. To the extent that a Settlement Class Member fails to provide any supplementation or additional information so requested, the Settlement Administrator may determine that the Settlement Class Member failed to submit a valid claim and therefore reject that claim.

3.3   The Settlement Administrator, in its discretion to be reasonably exercised, will evaluate claims submitted for Cash Payment Awards to determine whether: (a) the claimant is a Settlement Class Member; (b) the Claim Form is complete and accurate; and (c) the Settlement Class Member signed the Claim Form as required.

## 4.   Distribution of the Settlement Fund. Following the Claim Validation Process, the Settlement Administrator will distribute the Settlement Fund as follows:

4.1   **Funds Available for Distribution to Settlement Class Members**. The amount of the Settlement Fund available for distribution to Settlement Class Members (the "Distribution Fund") shall equal (i) the amount of the Settlement Fund, less (ii) any taxes, Costs of Settlement Administration, attorneys' fees, costs, and expenses, and Service Awards as further described in the Settlement  Agreement.

4.2   **Payment of Cash Payment Awards.**  Each Settlement Class Member that submits a valid claim will receive a Cash Payment Award per Claimed-On Card. Each Settlement Class Member's Cash Payment Award shall be calculated as follows:  (Distribution Fund / total number of Claimed-On Cards submitted in all timely and valid Claim Forms) x the number of the Settlement Class Member's Claimed-On Cards as submitted in a timely and valid Claim Form.

4.3   **Potential Supplemental Awards.**  If after payment of the Cash Payment Awards the Distribution Fund is not exhausted, then the remaining amounts (the "Supplemental Remainder") will be distributed pro rata to all Settlement Class Members that submitted a timely and valid Claim Form based on the number of

Claimed-On Cards that they issued, provided that to do so is administratively feasible, and otherwise to cy pres entities that will be selected by Class Counsel and approved by the Court.

5.      **Dispute Resolution**

5.1     If the Settlement Administrator determines that (i) a Settlement Class Member's number of Claimed-On Cards is fewer than the number claimed by such issuer in its Claim Form (a "Disputed Claim"), the Settlement Administrator will notify the claimant by email to the email address identified in the Claim Form (or a mailing address for those that do not provide an email address).

5.2     Each recipient of any notice pursuant to Section 5.1 herein will have ten (10) days from receipt of such notice to respond to the Settlement Administrator by reply email (or regular mail for those that did not provide an email address) by stating whether the claimant accepts or rejects the Settlement Administrator's determination regarding the Disputed Claim.  If claimant fails to timely respond to the notice provided pursuant to Section 5.1, then the Settlement Administrator's determination regarding the Disputed Claim shall be deemed final and accepted by the claimant.

        5.2.1   If the claimant rejects the Settlement Administrator's determination regarding the Disputed Claim, the Settlement Administrator will have ten (10) days to reconsider the original determination, make a final determination, and communicate the final determination to the claimant by email (or regular mail for those that did not provide an email address). The claimant will then have 10 days to reply back to the Settlement Administrator to accept or reject the final determination.  If claimant fails to timely respond to the notice provided pursuant to Section 5.2.1, then the claimant shall be deemed to have accepted the Settlement Administrator's final determination.

        5.2.2   If the claimant accepts the final determination, then the Settlement Administrator's final determination regarding the Disputed Claim will be used in calculating the Settlement Class Member's Cash Payment Award. If the final determination regarding the Disputed Claim is timely rejected by the claimant, then the Disputed Claim will be resolved in accordance with the procedures set out in Sections 5.3 and 5.4 below.

5.3     After receipt of a claimant's rejection of a final determination regarding a Disputed Claim, the Settlement Administrator will provide Class Counsel and Wendy's Counsel (together "Counsel") with a copy of the Claim Form and any documentation submitted by the claimant, and the communications between the Settlement Administrator and the claimant (the "Claim File").

        5.3.1   Counsel will confer regarding the Disputed Claim.

3

5.3.2   If Counsel agree, as applicable, that a claimant issued the number of Claimed-On Cards claimed on its Claim Form, Counsel's determination will be final. Counsel will inform the Settlement Administrator of their determination by email, and the Settlement Administrator will provide notice of the decision to the claimant.

5.3.3   If Counsel agree, as applicable, that a claimant issued fewer than the number of Claimed-On Cards claimed on its Settlement Fund Claim Form, then Counsel will notify the Settlement Administrator by email ("Counsel's Notice") and, if the Settlement Class Member continues to dispute Counsel's determination, the Disputed Claim at issue will be submitted to the "Claim Referee."  The Parties need not select a Claim Referee unless and until such time as one is needed.

5.3.4   If Counsel disagree, as applicable, during the inquiries described in 5.3.2 or 5.3.3, the Disputed Claim(s) at issue will be submitted to the Claim Referee.

5.4   After receipt of Counsel's Notice, the Settlement Administrator will provide the Claim Referee with a copy of the Claim File. The Claim Referee will make a final determination regarding the Disputed Claim. All such final determinations will be made by the Claim Referee based on whether the number of Claimed-On Cards at issue in the Disputed Claim, or some portion thereof, is reasonably supported in fact. The Claim Referee's decision will be final.