# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIRST CHOICE FEDERAL CREDIT UNION, AOD FEDERAL CREDIT UNION, TECH CREDIT UNION, VERIDIAN CREDIT UNION, SOUTH FLORIDA EDUCATIONAL FEDERAL CREDIT UNION, PREFERRED CREDIT UNION, ALCOA COMMUNITY FEDERAL CREDIT UNION, ASSOCIATED CREDIT UNION, CENTRUE BANK, ENVISTA CREDIT UNION, FIRST NBC BANK, NAVIGATOR CREDIT UNION, THE SEYMOUR BANK, FINANCIAL HORIZONS CREDIT UNION, NUSENDA CREDIT UNION, GREATER CINCINNATI CREDIT UNION, KEMBA FINANCIAL CREDIT UNION, WRIGHT-PATT CREDIT UNION, and MEMBERS CHOICE CREDIT UNION, on Behalf of Themselves and All Others Similarly Situated, <br><br> and <br><br> CREDIT UNION NATIONAL ASSOCIATION, GEORGIA CREDIT UNION AFFILIATES, INDIANA CREDIT UNION LEAGUE, MICHIGAN CREDIT UNION LEAGUE, and OHIO CREDIT UNION LEAGUE, <br><br>      Plaintiffs, <br><br>  v. <br><br> THE WENDY'S COMPANY, WENDY'S RESTAURANTS, LLC, and WENDY'S INTERNATIONAL, LLC, <br><br>      Defendants. | Civil No. 2:16-cv-00506-NBF-MPK <br><br><br> **JOINT DECLARATION OF GARY F. LYNCH AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1

We, Gary F. Lynch and Erin Green Comite, pursuant to 28 U.S.C. § 1746, declare as follows:

1. We are Class Counsel for the Financial Institution Plaintiffs[1] and Association Plaintiffs (collectively, "Plaintiffs") and the proposed Settlement Class in this class action against The Wendy's Company, Wendy's Restaurants, LLC, and Wendy's International, LLC (collectively, "Wendy's" or "Defendants"). We have been involved in all aspects of this Litigation since inception. We submit this Joint Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses. The information set forth in this Declaration is based upon our personal knowledge and we could testify competently to such information if called upon to do so.

2. Mr. Lynch is an attorney licensed in Pennsylvania and New York, and has been admitted to practice before the Supreme Court of the United States and numerous federal appellate and district courts, including this Court. He has been practicing law for 30 years and represents plaintiffs in complex matters, including many national class actions. Mr. Lynch is a founding member of the law firm of Carlson Lynch, LLP ("Carlson Lynch"). Ms. Comite is an attorney licensed in Connecticut and is admitted to practice in numerous federal district and appellate courts. She is a partner at Scott+Scott Attorneys at Law LLP ("Scott+Scott"). She has been practicing law for 17 years, and received her law degree from the University of Washington School of Law in 2002. She has extensive experience litigating complex and class actions. In addition, both Lynch and Comite have significant experience specifically in data breach litigation and

---

[1] All capitalized terms not defined herein have the meaning defined in the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") attached to Plaintiffs' Motion for Final Approval as Exhibit 1.

actions brought by financial institutions against merchants after data breaches. A copy of the firm resumes of Carlson Lynch and Scott+Scott are attached to each firm's respective declaration submitted contemporaneously herewith in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

3. The proposed Settlement Agreement was reached between the Parties after extensive arms-length negotiations overseen by experienced mediators. A true and accurate copy of the Agreement is attached to Plaintiffs' Motion for Final Approval as Exhibit 1. Based upon our experience litigating numerous complex class actions, it is our opinion that the proposed settlement in this case is fair, adequate, and reasonable so as to satisfy the requirements for final approval pursuant to Fed. R. Civ. P. 23.

4. The first complaint in this Litigation was filed on April 25, 2016. Thereafter, on July 22, 2016, Plaintiffs filed the operative Complaint, which asserts claims for negligence, negligence *per se*, violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Code §§ 4165.01, *et seq*., and declaratory and injunctive relief. (ECF No. 32). On August 22, 2016, Wendy's moved to dismiss the Complaint. (ECF No. 53). On February 13, 2017, Magistrate Judge Kelly issued a Report and Recommendation, recommending that the Court deny the Motion to Dismiss. (ECF No. 80). On March 31, 2017, the Court adopted the Report and Recommendation and denied Wendy's Motion to Dismiss. (ECF No. 88).

5. Subsequent to the denial of the Motion to Dismiss, the Parties agreed to seek a resolution of the case through mediation and, on May 15, 2017, the Parties attended a full-day mediation session before the Honorable Edward Infante in San Francisco. The session did not result in a settlement, but the Parties agreed to return for another mediation session after conducting discovery regarding two issues: 1) the appropriate choice of law for Plaintiffs' claims; and 2) the

impact of the fact that only Wendy's franchisee locations were impacted by the Data Breach. Class Counsel believed that agreeing to a scheduling order that prioritized this discovery and resolution of the choice-of-law question would facilitate progress in the Litigation and future settlement negotiations.

6. The Parties engaged in significant discovery related to those two issues. In particular, Plaintiffs served extensive document requests, in response to which Wendy's produced millions of pages of documents, which Plaintiffs reviewed. Plaintiffs also deposed Wendy's corporate representative, pursuant to Fed. R. Civ. P. 30(b)(6). Additionally, Plaintiffs served subpoenas on several third parties, including the major payment card brands MasterCard and Visa, and reviewed thousands of pages that were produced in response. Similarly, Wendy's served each Financial Institution Plaintiff with extensive document requests, in response to which Plaintiffs produced thousands of pages of documents. Wendy's deposed 16 corporate witnesses which were designated by 15 of the Financial Institution Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiffs also engaged experts to consult on liability and to develop a classwide damages model both for purposes of mediation and ultimately class certification and summary judgment.

7. On January 19, 2018, Plaintiffs filed a motion seeking to apply Ohio law to Plaintiffs' claims on a nationwide basis (ECF No. 131), which Wendy's opposed. (ECF No. 139). On May 9, 2018, Magistrate Judge Kelly issued a Report and Recommendation, recommending that the Court grant the Motion for Application of Ohio Law as to the negligence and negligence *per se* claims, and deny it as to the ODTPA claim to the extent any Plaintiffs not located in Ohio sought to assert that claim. (ECF No. 147 at 14). District Judge Nora Barry Fischer adopted the Report and Recommendation on June 6, 2018 (ECF No. 152), and shortly thereafter the Parties were ordered to participate in another alternative dispute resolution process. (ECF No. 153). Since

Judge Infante, the original mediator, had by then resumed his position as a Magistrate Judge for the Central District of California, the Parties arranged for the Honorable Diane M. Welsh (Ret.) to serve as a mediator. The Parties attended two full-day sessions before Judge Welsh, on August 29, 2018 and November 16, 2018, in Philadelphia. A settlement in principle was achieved shortly after the November 16 session.

8. Two representatives of the Financial Institution Plaintiffs, Susan Bradley of Plaintiff Members Choice Credit Union and Greg Slessor of Plaintiff Veridian Credit Union, attended the August 29, 2018 mediation. In support of their mediation positions, the Parties drafted detailed mediation briefs that explored the strengths and weaknesses of each side's case, including issues of liability, class certification, and proof of damages, and attached numerous exhibits. The Parties also participated in numerous direct discussions to facilitate and supplement the in-person mediation sessions before Judge Welsh.

9. The Parties did not negotiate the amount of attorneys' fees and expenses or Service Awards to the Settlement Class Representatives until after the key provisions of the Settlement, including the amount of relief to the Settlement Class, were agreed upon.

10. Under the Settlement Agreement, Wendy's will create a non-reversionary Settlement Fund of $50 million in exchange for a release of all claims against Wendy's and Wendy's Franchisees arising out of the Data Breach. The Settlement Fund will be used to pay: (1) disbursements to Settlement Class Members that file approved claims; (2) the Costs of Settlement Administration and any taxes due on the Settlement Fund account; (3) attorneys' fees, costs, and expenses to Class Counsel in amounts approved by the Court; and (4) Service Awards to the Settlement Class Representatives in amounts approved by the Court. Wendy's also will adopt or maintain certain reasonable safeguards to manage its data security risks. Prior to the filing of

Plaintiffs' motion for preliminary approval, each named Plaintiff consented to the submission of this proposed Settlement for the Court's approval.

11. Based upon discovery conducted by Plaintiffs, as well as information exchanged during the mediation process, Plaintiffs estimate that approximately 18 million payment cards were alerted on as a result of the Data Breach and, accordingly, will be included in the Settlement. Class Counsel provided information obtained through discovery to the appointed Settlement Administrator, Analytics Consulting, LLC ("Analytics"). Based on the work performed by the Settlement Administrator to process this data, it appears that there are approximately 5,168 Settlement Class Members that issued payment cards exposed in the Data Breach. *See* Declaration of Christopher D. Amundson ¶ 5 (filed concurrently herewith). Under the proposed Distribution Plan that will govern payments from the Settlement Fund, Settlement Class Members that file an Approved Claim will receive a Cash Payment Award per Claimed-On Card without having to submit documentation or prove their losses. The amount of the cash payment will depend on the total number of eligible payment cards for which an Approved Claim is submitted by Settlement Class Members, the Costs of Settlement Administration, taxes paid on the Settlement Fund, and the amount of attorneys' fees, costs, and expenses, and Service Awards approved by the Court. By way of example, if valid claims had been submitted for all eligible cards, it is estimated that Settlement Class Members would have received approximately $2.00 per eligible payment card.

12. A declaration from Analytics is being contemporaneously filed herewith that provides an update regarding the Court-approved Notice Program and Claims Administration process to date. Based on information provided by Analytics, as of October 1, 2019, approximately 26.8% of the Settlement Class has submitted a claim. In Class Counsel's experience, this is a high claims rate for this type of case. While Analytics is still processing claims submitted near the

deadline, claims were made by approximately 1,389 Settlement Class Members that issued approximately 7.5 million payment cards that were alerted on as a result of the Data Breach. Based on the claims filed as of October 1, 2019 (which are still subject to verification), the projected payments to Settlement Class Members will be within the range of $4.41 to $5.10 per Claimed-On Card.

13. As of today's date, Class Counsel is not aware of any objections to the Settlement.

14. In the context of data breach litigation pertaining to payment cards, this Settlement is unique in that it is the first nationwide class action settlement achieved in a case where financial institutions did not receive any compensation through the card brand recovery processes, such as Visa's Global Compromised Account Recovery ("GCAR") program or MasterCard's Account Data Compromise ("ADC") program. This Settlement represents the sole relief available to the Settlement Class Members as a result of the Data Breach, and presented an opportunity for Plaintiffs and Settlement Class Members to recoup a significant percentage of their losses stemming from the Wendy's Data Breach.

15. The lawyers who were appointed by the Court to leadership positions on behalf of Plaintiffs are abundantly qualified and experienced to represent the class, including, specifically, Class Counsel Gary F. Lynch and Erin Green Comite. *See* ECF Nos. 15, 15-1, 21. The background and firm profiles of both Mr. Lynch's firm, Carlson Lynch, and Ms. Comite's firm, Scott + Scott, as well as the profiles of the additional counsel for Plaintiffs who assisted Class Counsel in this Litigation (collectively, with Class Counsel, "Plaintiffs' Counsel"), including those appointed to the Plaintiffs' Executive Committee (ECF No. 21), are being submitted in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.  These materials

provide additional details regarding our qualifications to serve as Class Counsel, and the qualifications of the other Plaintiffs' Counsel.

16. In this case, Plaintiffs' Counsel have done substantial work in vigorously pursuing the interests of our clients and the class they sought to represent throughout the litigation. We have aggressively litigated this action, and used our experience in these types of cases to craft a novel and efficient case management schedule that allowed development of discrete factual and legal issues that would drive the litigation forward and permit the parties to refine their positions so as to facilitate productive negotiations. Specifically, achieving early resolution of the choice of law issue set the stage for our anticipated class certification motion, had the case not settled. Our efficient management the review of millions pages of documents produced by Wendy's and third parties—and our drafting of comprehensive mediation statements assessing the legal and factual strengths and weaknesses of the case—gave us adequate information on which to negotiate and evaluate this Settlement. The group of lawyers and law firms representing Plaintiffs in this matter are at the forefront of the fast-developing area of data breach law and litigation. Had the action not settled, counsel for Plaintiffs were prepared to devote substantial additional time and effort pressing Plaintiffs' claims through class certification, trial and any subsequent appeal.

17. The Settlement Class Representatives have demonstrated their adequacy in selecting well-qualified Class Counsel, monitoring the Litigation, and participating in discovery and the mediation process. The Settlement Class Representatives were highly cooperative in making themselves available for document production and/or deposition testimony. Additionally, each Settlement Class Member actively communicated with Class Counsel for purposes of advising and consulting with regard to the consequences of the Data Breach and their resulting damages. These communications were crucial to the development of a workable damage model

to facilitate the mediation process. The Service Award requested for the Settlement Class Representatives is not predicated on the existence of any special treatment, negotiation, or promise from Class Counsel. The request is being made purely as a legitimate consideration to the Settlement Class Representatives for their efforts in initiating the lawsuit, staying abreast of all aspects of the Litigation, cooperating in discovery, and fairly and adequately protecting the interests of the absent Settlement Class Members. We are not aware of any fundamental conflicts of interest among Plaintiffs or Settlement Class Members, and we are not aware of any interests the Plaintiffs have that are antagonistic to the interests of the Class Members.

18. Based on our experience, we believe that the Settlement is fair, adequate, reasonable, an excellent result for the Settlement Class, and represents a desirable resolution of this Litigation. Generally speaking, in the still developing area of data breach litigation, there are many impediments to class certification and a favorable judgment for a financial institution suffering harm as a result of a data breach. In this case, all of these uncertainties and impediments are present, as well as the additional issue presented by the fact that only Wendy's franchisee locations were impacted by the Data Breach. Given these litigation risks, this Settlement is a good one for the Settlement Class Members and provides an opportunity for the recoupment of a significant percentage of the losses resulting from the Data Breach.

19. Plaintiffs' Counsel in this case have received no compensation to date for their efforts during the course of this multiyear litigation, and until the Settlement was negotiated, there was no guarantee that any fees would be recovered. All expenses described below were advanced by the firms, once again with no guarantee of repayment. Class Counsel submit that all work performed and expenses incurred were reasonable and necessary for the prosecution of the Litigation, and therefore, should be approved. The below chart is a summary of the total hours

worked, total lodestar, and total expenses incurred by Plaintiffs' Counsel, as represented in the individual declarations filed concurrently herewith:

| **Law Firm** | **Hours** | **Lodestar** | **Expenses** |
|---|---:|---:|---:|
| Carlson Lynch | 4,079.65 | $2,322,629.50 | $57,061.72 |
| Scott+Scott | 5,141.50 | $3,055,685.00 | $98,203.87 |
| Chestnut Cambronne | 4,064.20 | $1,914,237.50 | $30,981.91 |
| Lockridge Grindal Nauen | 1,228.28 | $741,411.50 | $38,339.94 |
| Zimmerman Reed | 2,526.25 | $1,018,561.00 | $33,956.73 |
| Hausfeld | 2,420.50 | $1,266,141.00 | $31,878.24 |
| Murray Law Firm | 956.20 | $384,835.00 | $25,624.07 |
| Roberts Law Firm | 1,122.80 | $602,690.00 | $30,403.16 |
| Berman Fink Van Horn | 221.80 | $150,441.00 | $903.46 |
| Kudulis, Reisinger & Price | 186.20 | $75,411.00 | $0.00 |
|  |  |  |  |
| Remainder in Litigation Fund |  |  | ($68.95) |
|  |  |  |  |
| **Totals** | **21,947.38** | **$11,532.042.50** | **$347,284.15** |

20. Based on the foregoing chart, the requested fees of approximately $15 million represent a multiplier of 1.3 of Plaintiffs' Counsel's lodestar. Class Counsel collected from all Plaintiffs' Counsel detailed billing records and have reviewed such records to make sure they are: 1) consistent with the summaries provided; and 2) reflective of and consistent with the work performed in the case. The tasks performed are typical in litigation and were necessary to the successful prosecution and resolution of the claims against Wendy's. The hours Plaintiffs' Counsel have billed were spent, *inter alia*, drafting pleadings and briefs, litigating numerous discovery disputes, taking and defending depositions, responding to discovery requests, producing documents, reviewing document productions, working with experts, and negotiating the

Settlement. Class Counsel submit that all work performed and expenses incurred were reasonable and necessary for the prosecution of the Litigation, and therefore, should be approved.

21. Plaintiff's Counsel's expenses, in an aggregate amount of $347,284.15, are typical in litigation, were necessary to the successful prosecution and resolution of the claims against Wendy's, and should be approved. Based on Class Counsel's review of the total expenses incurred, e-discovery vendor fees represent approximately 48% of the expenses incurred, travel expenses to attend depositions, mediations, and hearings represent approximately 22%, and expert fees represent approximately 10%. The remainder of the expenses include online legal and factual research, mediators' fees, court reporting fees, transcript costs, postage, and photocopying.

22. The Agreement includes a provision (¶¶ 71–72) granting Wendy's discretion to terminate the Agreement if Settlement Class Members representing a certain number of Alerted on Payment Cards elect to opt-out of the Settlement Class. The threshold number was established in a side agreement between Plaintiff's Counsel and Wendy's, separate from the Settlement Agreement. Only one timely request for exclusion has been received, and thus, the termination provision has not been triggered. A second separate agreement was entered pursuant to Paragraph 80 of the Settlement Agreement, in which the Parties agreed to work together in good faith to coordinate the public announcements and communications regarding the Settlement Agreement. The side agreement included a few specific limitations on how Plaintiffs' Counsel would describe the Settlement publicly. Neither side agreement conflicts with the terms of the public Settlement Agreement, provides for any additional consideration to Plaintiffs or their Counsel, or includes any promises by Wendy's or Plaintiffs' Counsel that are materially different from the rights and obligations described in the public Settlement Agreement. Other than the Agreement itself and the separate agreements establishing the opt-out threshold referenced in SA ¶¶ 71–72, and the public

communications limitations referenced in SA ¶ 80, Class Counsel are aware of no agreements made in connection with this proposed Settlement that would need to be disclosed pursuant to Rule 23(e)(3).

We declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of October, 2019, in Pittsburgh, Pennsylvania.

>*/s/ Gary F. Lynch*
>Gary F. Lynch

Executed this 7th day of October, 2019, in Colchester, Connecticut.

>*/s/ Erin Green Comite*
>Erin Green Comite