## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIRST CHOICE FEDERAL CREDIT UNION, AOD FEDERAL CREDIT UNION, TECH CREDIT UNION, VERIDIAN CREDIT UNION, SOUTH FLORIDA EDUCATIONAL FEDERAL CREDIT UNION, PREFERRED CREDIT UNION, ALCOA COMMUNITY FEDERAL CREDIT UNION, ASSOCIATED CREDIT UNION, CENTRUE BANK, ENVISTA CREDIT UNION, FIRST NBC BANK, NAVIGATOR CREDIT UNION, THE SEYMOUR BANK, FINANCIAL HORIZONS CREDIT UNION, NUSENDA CREDIT UNION, GREATER CINCINNATI CREDIT UNION, KEMBA FINANCIAL CREDIT UNION, WRIGHT-PATT CREDIT UNION, and MEMBERS CHOICE CREDIT UNION, on Behalf of Themselves and All Others Similarly Situated, | Civil No. 2:16-cv-00506-NBF-MPK |
| and | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| CREDIT UNION NATIONAL ASSOCIATION, GEORGIA CREDIT UNION AFFILIATES, INDIANA CREDIT UNION LEAGUE, MICHIGAN CREDIT UNION LEAGUE, and OHIO CREDIT UNION LEAGUE, | |
| Plaintiffs, | |
| v. | |
| THE WENDY'S COMPANY, WENDY'S RESTAURANTS, LLC, and WENDY'S INTERNATIONAL, LLC, | |
| Defendants. | |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    ARGUMENT ......................................................................................... 3

    A.    The Percentage of the Recovery Approach Is the Proper Standard to Apply in Awarding Attorneys' ............................................................................. 3

    B.    The Requested Fee Is Fair and Reasonable Under the Third Circuit's *Gunter/Prudential* Factors ....................................................................... 4

        1.    The Size and Nature of the Common Fund Created and Number of Persons Benefited by the Settlement.................................... 5

        2.    The Absence of Objections to the Settlement and Requested Fee............. 6

        3.    The Skill and Efficiency of Attorneys Involved ......................................... 6

        4.    The Complexity and Duration of the Litigation ........................................ 8

        5.    The Risk of Non-Payment .......................................................................... 9

        6.    The Amount of Time Devoted to the Litigation by Plaintiffs' Counsel ... 10

        7.    The Fee Request Is Comparable to Awards in Similar Cases ................. 10

        8.    The Settlement Benefits Are Attributable Solely to the Efforts of Plaintiffs' Counsel .................................................................................. 11

        9.    The Percentage Fee Approximates the Fee that Would Have Been Negotiated in the Private Market ............................................................ 12

        10.    Innovative Terms of the Settlement......................................................... 12

    C.    The Lodestar Cross-Check Confirms the Fee Request Is Reasonable................. 12

    D.    Plaintiffs' Counsel's Request for Reimbursement of Expenses Is Reasonable.... 16

    E.    The Requested Service Awards Are Reasonable.................................................. 17

III.    CONCLUSION.................................................................................... 18

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
   No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 6, 2019) ..................................11

*In re AT & T Corp., Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)....................................................................................................3, 4

*Barel v. Bank of Am.*,
   255 F.R.D. 393 (E.D. Pa. 2009)..................................................................................................18

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)......................................................................................................................3

*Bredbenner v. Liberty Travel, Inc.*,
   No. 09-905 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ..................................................18

*Brown v. Progressions Behavioral Health Servs., Inc.*,
   No. 16-6054, 2017 WL 2986300 (E.D. Pa. July 13, 2017) ...............................................11, 18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)....................................................................................................6, 12

*In re Cigna-Am. Specialty Health Admin. Fee Litig.*,
   No. 2:16-cv-03967-NIQA, 2019 WL 4082946 (E.D. Pa. Aug. 29, 2019).........................11, 14

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
   887 F.3d 803 (7th Cir. 2018) .......................................................................................................9

*In re Diet Drugs*,
   582 F.3d 524 (3d Cir. 2009).........................................................................................................4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).........................................................................................................10

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)..................................................................................................3, 4, 12

*Harshbarger v. Penn Mut. Life Ins. Co.*,
   No. 12-6172, 2017 WL 6525783 (E.D. Pa. Dec. 20, 2017).................................................4, 11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983).................................................................................................................5, 13

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583 (N.D. Ga. Aug. 23, 2017).........................................................................5

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)..............................9

*Huffman v. Prudential Ins. Co. of Am.*,
No. 2:10-CV-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)..........................................11

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*.,
No. JKB-16-3025, 2019 WL 3183651 (D. Md. July 15, 2019)...............................................11

*In re Ikon Office Sols., Inc. Sec. Litig*.,
194 F.R.D. 166 (E.D. Pa. 2000)..................................................................................8, 12, 13

*Krimes v. JPMorgan Chase Bank, N.A.*,
No. 15-5087, 2017 WL 2262998 (E.D. Pa. May 24, 2017).....................................................14

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001)...................................................................................................13

*Martin v. Foster Wheeler Energy Corp*.,
No. 3:06-CV-0878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008) ...........................................15

*McDonough v. Toys "R" Us, Inc.*,
80 F. Supp. 3d 626 (E.D. Pa. 2015) .......................................................................................10

*McKenna v. City of Phila*.,
582 F.3d 447 (3d Cir. 2009)...................................................................................................13

*In re Merck & Co., Inc. Vytorin ERISA Litig*.,
No. 08-CV-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ...................................11, 14

*Mo. v. Jenkins by Agyei*,
491 U.S. 274 (1989)...............................................................................................................13

*Moore v. GMAC Mortg*.,
No. 07-4296, 2014 WL 12538188 (E.D. Pa. Sept. 19, 2014) .................................................14

*Morrow v. Ann, Inc*.,
No. 1:16-cv-03340 (S.D.N.Y.).................................................................................................14

*In re Ocean Power Techs., Inc., Sec. Litig*.,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................9, 12, 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)...................................................................................................15

*In re Rite Aid Corp. Sec. Litig*.,
396 F.3d 294 (3d Cir. 2005)...................................................................................................12

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
    No. 08-1432 (DMC)(JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) ................................9

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
    No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...............................13

*Sullivan v. DB Invs. Inc.*,
    667 F.3d 273 (3d Cir. 2011).........................................................................................3, 17

*In re: Target Corp. Customer Data Sec. Breach Litig.*,
    No. 0:14-md-02522 (D. Minn. Apr. 11, 2016) ..............................................................5

*In re: Target Corp. Customer Data Sec. Breach Litig.*,
    No. 14-2522 (PAM), 2016 WL 2757692 (D. Minn. May 12, 2019) .................................9, 11

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007).....................................................................................9

*Veridian Credit Union v. Eddie Bauer LLC*,
    No. 17-cv-0356-JLR (W.D. Wash. June 12, 2019) ....................................................9

*In re Viropharma Inc. Sec. Litig.*,
    No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...............................5, 6, 14

*In re Vizio, Inc. Consumer Privacy Litig.*,
    No. 8:16-ml-02693 (C.D. Cal. Apr. 12, 2019)......................................................14

*Wallace v. Powell*,
    288 F.R.D. 347 (M.D. Pa. 2012)....................................................................................12

*In re Wilmington Tr. Sec. Litig.*,
    No. 10-cv-0990-ER, 2018 WL 6046452 (D. Del. Nov. 19, 2018) ..................................16, 18

## STATUTES, RULES & REGULATIONS

FED. R. CIV. P. 23(h) ..................................................................................................................3

## OTHER AUTHORITIES

ANNOTATED MANUAL FOR COMPLEX LITIGATION §21.62 (4th ed. 2019).......................................17

## I.     INTRODUCTION

Financial Institution Plaintiffs[1] and Association Plaintiffs (collectively, "Plaintiffs") move under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees, reimbursement of expenses, and approval of a Service Award for each Financial Institution Plaintiff in connection with the proposed class action Settlement entered into with Defendants The Wendy's Company, Wendy's Restaurants, LLC, and Wendy's International, LLC (collectively, "Defendants" or "Wendy's").  The Court preliminarily approved the Settlement on February 26, 2019.  ECF No. 183.  Contemporaneously with this motion, Plaintiffs are filing a motion for Final Approval of the Settlement and certification of the Settlement Class under Rule 23(e).

Counsel for Plaintiffs have not received any compensation for their prosecution of this Litigation, which required more than two-and-a-half years of vigorous advocacy.  Plaintiffs substantially prevailed on the motion to dismiss and their motion for application of Ohio law. Further, the parties commenced fact discovery, and Plaintiffs' Counsel reviewed millions of pages of party and third-party documents, deposed Wendy's corporate representative, and defended 16 full-day depositions of Financial Institution Plaintiffs.  Under the Settlement, Wendy's will pay $50 million into a non-reversionary fund in exchange for a release of all claims against Wendy's and Wendy's Franchisees arising from third-party criminal cyberattacks of certain of Wendy's independently owned and operated franchisee restaurants involving malware variants targeting customers' payment card information that Wendy's reported in 2016 (the "Data Breach"). Wendy's also will adopt or maintain certain reasonable safeguards to manage its data security risks.  If approved, the Settlement will resolve all pending claims in these consolidated actions and

---

[1]     Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the Settlement Agreement and Release ("Agreement" or "SA") (ECF No. 176-1).

provide monetary relief to a nationwide class of payment-card-issuing financial institutions.  The Settlement is an excellent result in a complex, high-risk, hard-fought case that provides a substantial financial recovery for payment card issuers that suffered losses as a result of the Data Breach.  Thus, Class Counsel[2] respectfully request, on behalf of all Plaintiffs' Counsel, that the Court approve an award of 30% of the Settlement Fund (including any interest earned thereon), or approximately $15 million, as attorneys' fees, $347,284.15 as reimbursement of litigation expenses, and $120,000 as Service Awards for Financial Institution Plaintiffs.  Where Plaintiffs' Counsel's lodestar is approximately $11.5 million, this represents a 1.3 multiplier, which supports the reasonableness of the requested attorneys' fee award.

As discussed below and in the Joint Declaration,[3] it is respectfully submitted that the requested fee is reasonable when considered under the Third Circuit applicable standards, particularly in view of the substantial risks of pursuing this Litigation, considerable litigation efforts, and results achieved for the Settlement Class.  Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of this Litigation.  Finally, the requested Service Award for each Financial Institution Plaintiff is customary and warranted to compensate the Financial Institution Plaintiffs for their participation in this Litigation on behalf of the Settlement Class.  Thus, Class Counsel respectfully request that the Court award 30% of the Settlement Fund (including interest earned thereon) as attorneys' fees,

---

[2]      Class Counsel were aided in this case by Lockridge Grindal Nauen, P.L.L.P., Zimmerman Reed LLP, Chestnut Cambronne PA, Murray Law Firm, and Hausfeld LLP, which the Court appointed to serve as members of the Plaintiffs' Executive Committee (ECF No. 21), as well as the Roberts Law Firm, P.A., Berman Fink Van Horn, P.C., and Kudulis, Reisinger & Price LLC. These law firms, along with Class Counsel, are collectively referred to herein as "Plaintiffs' Counsel."  No other law firms will share in the attorneys' fees awarded by the Court.

[3]      All "Joint Declaration" or "Joint Decl." references are to the Joint Declaration of Gary F. Lynch and Erin Green Comite concurrently filed in support hereof and in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

$347,284.15 as reimbursement of litigation expenses, and $120,000 as Service Awards for Financial Institution Plaintiffs.

## II.     ARGUMENT

### A.     The Percentage of the Recovery Approach Is the Proper Standard to Apply in Awarding Attorneys' Fees in Common Fund Cases

It is well settled that attorneys who represent a class and whose efforts achieve a benefit for class members are "entitled to a reasonable attorney's fee from the fund as a whole" as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Rule 23 also permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As courts recognize, in addition to providing just compensation, awards of fair attorneys' fees from a common fund "'ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).[4]

In awarding attorneys' fees, the Third Circuit has held that such requests are "generally assessed under one of two methods: the percentage-of-recovery [ ] approach or the lodestar scheme." *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). The percentage-of-recovery approach "'applies a certain percentage to the settlement fund,'" while the lodestar method "'multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services.'" *Id.* (quoting *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009)). The percentage-of-recovery approach is more appropriate where, as here, there is a common fund. *In re AT & T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (stating that the percentage method is "generally favored" in common fund cases "because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for

---

[4]     Unless otherwise indicated, internal citations are omitted.

failure" (internal quotations omitted)); *see also Harshbarger v. Penn Mut. Life Ins. Co.*, No. 12-6172, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee awards in common fund cases . . . is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check."). The ultimate determination of the proper amount of attorneys' fees, of course, rests within the sound discretion of the district court. *See Gunter*, 223 F.3d at 195; *AT & T*, 455 F.3d at 168-69.

Class Counsel respectfully submit that their requested fee is fair and reasonable under the percentage-of-the-fund method, as supported by the lodestar cross check, as discussed below.

**B.    The Requested Fee Is Fair and Reasonable Under the Third Circuit's *Gunter/Prudential* Factors**

The Third Circuit requires district courts to consider the following ten factors, commonly referred to as the *Gunter/Prudential* factors, when evaluating whether a fee request is fair and reasonable:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement[.]

*Diet Drugs*, 582 F.3d at 541. These fee award factors "need not be applied in a formulaic way[,] . . . and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1. Each of these factors supports the requested fee.

4

1. **The Size and Nature of the Common Fund Created and Number of Persons Benefited by the Settlement**

Courts have consistently recognized that the result achieved is a major factor to be considered in awarding fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016). If approved, the Settlement will provide substantial monetary relief to a nationwide class of approximately 5,168 payment-card-issuing financial institutions. Amundson Decl. ¶5.[5] The Settlement is in line with the per-card amounts obtained for financial institution class members in approved settlements in at least two other similar cases. Based on a review of Analytics' claims data, the projected payments to Settlement Class Members likely will be within the range of $4.41 to $5.10 per card. Joint Decl. ¶12. This relief compares favorably with settlements negotiated by financial institution plaintiffs in the *Target* and *Home Depot* data breach class actions. Those settlements – both of which received final approval – provided financial institutions with $1.50 and $2.00 fixed per-card recovery, respectively, without documentation of loss (with an option to obtain a percentage of documented losses). *See In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017).[6] Wendy's also will adopt or maintain certain reasonable safeguards to manage its data security risks, which will serve to protect Settlement Class Members from the risk of future harm. SA ¶¶41-42. In light

---

[5]     All "Amundson Decl." references are to the Declaration of Christopher D. Amundson filed in support hereof.
[6]     In *Home Depot* and *Target*, the financial institutions received payments through the assessment programs managed by Visa and MasterCard, whereas here, there were no such payments. Jt. Decl. ¶14.

of the approximate 27% claims rate (Amundson Decl. ¶13), the Settlement Class' favorable reaction supports that the Settlement is an excellent result.

### 2.      The Absence of Objections to the Settlement and Requested Fee

The deadline for Settlement Class Members to object to or opt-out of the Settlement was May 28, 2019.  ECF No. 183 at 11.  The Settlement Administrator fully implemented the Court-approved Notice Program, sending Notice directly to approximately 5,168 Settlement Class Members and creating the Settlement Website and toll-free assistance number.  Amundson Decl. ¶¶5-11.  The Notice apprised Settlement Class Members that Plaintiffs' Counsel would seek "an award of 30% of the gross Settlement Fund in attorneys' fees, including any interest earned thereon," as well as reimbursement for all expenses.  ECF No. 176-4 at 8.  The Notice also advised Settlement Class Members how and when to object to or opt out of the Settlement.  *Id*. at 6-9. There have been no objections to any aspect of the Agreement, including the request for attorneys' fees and expenses (Joint Decl. ¶13), and only one timely Request for Exclusion has been received. Amundson Decl. ¶14.  As the Third Circuit has noted, "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement[.]"  *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3d Cir. 2001).

### 3.      The Skill and Efficiency of Attorneys Involved

Plaintiffs' Counsel's skill and efficiency is "measured by the 'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'"  *Viropharma*, 2016 WL 312108, at *16.

Plaintiffs' Counsel have extensive and significant experience in the specialized field of data breach class action litigation.  The favorable Settlement is attributable, in large part, to the

diligence, determination, hard work, and skill of Plaintiffs' Counsel, who developed, litigated, and successfully settled this Litigation.  As set forth in the Joint Declaration, as well as the individual declarations of the additional counsel, Plaintiffs' Counsel are highly experienced attorneys in this type of litigation and have a strong track record of leading these relatively unique cases and obtaining favorable results for financial institutions.  Joint Decl. ¶¶2, 15-16; Lynch Decl., Ex. C; Scott Decl., Ex. D; Riebel Decl., Ex. C; Bleichner Decl., Ex. C; Gudmundson Decl., Ex. C; Murray Decl., Ex. C; Halbert Decl., Ex. C; Pizzirusso Decl., Ex. C; Van Horn Decl., Ex. C; Kudulis Decl., Ex. B.[7]  These skills were put to the test in this Litigation, as it involved novel issues and a defense team led by equally skilled and experienced attorneys.

In all phases of the case, Plaintiffs' Counsel performed with a high level of skill.  Though this Litigation never reached the class certification stage, Plaintiffs' Counsel's work on motions practice and extensive discovery led the parties to engage in three eight-hour mediation sessions overseen by Honorable Edward Infante (Ret.) and Honorable Diane M. Welsh (Ret.) to reach the final Settlement.  Plaintiffs' Counsel's skill and experience in the areas of complex data breach matters, as well as in large-scale class actions, were directly responsible for the favorable Settlement.  Specifically, Class Counsel crafted a novel and efficient case management schedule that allowed development of discrete factual and legal issues that drove the litigation forward and permitted the parties to refine their positions so as to facilitate productive settlement negotiations. Joint Decl. ¶16.  This also set the stage for an anticipated class certification motion, had the case

---

[7]    All "Lynch Decl.," "Scott Decl.," "Riebel Decl.," "Bleichner Decl.," "Gudmundson Decl.," "Murray Decl.," "Halbert Decl.," "Pizzirusso Decl.," "Van Horn Decl.," and "Kudulis Decl." references are to the Declarations of Gary F. Lynch, Daryl F. Scott, Karen H. Riebel, Bryan L. Bleichner, Brian C. Gudmundson, Arthur Murray, Karen Halbert, James J. Pizzirusso, Charles H. Van Horn, and Jonathan L. Kudulis, respectively, which are concurrently filed in support hereof and in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

not settled.  *Id.*  Plaintiffs' Counsel developed a productive relationship with opposing counsel and worked collaboratively with them to streamline and appropriately sequence discovery, motions practice and mediation efforts.  Plaintiffs' Counsel also worked efficiently among themselves, coordinating the work to avoid duplication or overlap and their lodestar reflects the intensity with which this Litigation was handled, as expected in a consolidated, and highly complex, class action.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Plaintiffs' Counsel.  *See*, *e.g.*, *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  Here, Wendy's was represented by undeniably experienced and skilled attorneys at a prominent, nationally recognized law firm, Alston & Bird, LLP.  The ability of Plaintiffs' Counsel to obtain a favorable outcome for the Settlement Class in the face of formidable legal opposition further confirms the quality of Plaintiffs' Counsel's representation and supports the reasonableness of the requested attorneys' fee award.

### 4.     The Complexity and Duration of the Litigation

There is no question that during the more than two-and-a-half years of litigation, Plaintiffs faced, and Plaintiffs' Counsel resisted, vociferous defenses to liability and damages.  *See*, *e.g.*, ECF Nos. 54, 139, 164.  Although Plaintiffs prevailed at the motion to dismiss stage and the Court granted Plaintiffs' motion to apply Ohio law nationwide, Wendy's continues to vehemently deny liability and there is no assurance that Plaintiffs would have prevailed at class certification or summary judgment.  *See*, *e.g.*, ECF No. 164.  Data breach litigation faces significant legal hurdles related to, *inter alia*, causation and damages.  The fact that the breached locations were franchisees of Wendy's also could have been a substantial obstacle in proving liability.  In short, this was not a simple, familiar type of case with a clear path to liability and judgment, and this Litigation would have continued for several years had it not settled.

Recent precedents in similar cases have had mixed outcomes for plaintiff financial institutions. Some similar cases have ended in settlements, such as *Target*, *Home Depot*, and *Eddie Bauer*,[8] but others have been dismissed in whole or substantial part, *e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817-18 (7th Cir. 2018), and class certification has been denied in others. *E.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance). Plaintiffs' Counsel worked diligently to achieve a significant result for the Settlement Class in the face of very real litigation risks. Accordingly, this factor supports the reasonableness of the requested attorneys' fee award.

## 5. The Risk of Non-Payment

"Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432 (DMC)(JAD), 2012 WL 1964451, at *7 (D.N.J. May 31, 2012). Plaintiffs' Counsel undertook this action on an entirely contingent fee basis, shouldering the risk that this Litigation would yield no recovery and leave them wholly uncompensated for their time, as well as for their out-of-pocket expenses. A dispositive ruling at any stage of this prolonged Litigation could mean a zero recovery for the Settlement Class. Wendy's asserted several substantial defenses that could have eliminated any possibility of recovery for the Settlement Class, as well as non-payment for Plaintiffs' Counsel. Courts within this Circuit have accordingly recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See In*

---

[8]      *See In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM), 2016 WL 2757692 (D. Minn. May 12, 2019); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *Veridian Credit Union v. Eddie Bauer LLC*, No. 17-cv-0356-JLR, ECF No. 165 (W.D. Wash. June 12, 2019).

*re Ocean Power Techs., Inc., Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016).

### 6.    The Amount of Time Devoted to the Litigation by Plaintiffs' Counsel

Plaintiffs' Counsel have received no compensation for their efforts during the course of this Litigation for more than two-and-a-half years.  They risked non-payment of $347,284.15 in out-of-pocket expenses and for the nearly 22,000 hours they worked in this Litigation, knowing that if their efforts were not successful, no fee would be paid.   Joint Decl. ¶19.   Plaintiffs' Counsel vigorously litigated and defended this Litigation.  This includes, *inter alia*, the time spent in the initial investigation of the case; researching complex issues of law; preparing and filing the complaints; researching and briefing the issues in connection with Wendy's motion to dismiss, as well as Plaintiffs' motion for nationwide application of Ohio law; drafting, responding to, and meeting and conferring about objections to discovery; working with experts; reviewing and analyzing documents produced by Wendy's and non-parties; taking and defending depositions; and preparing for and participating in mediations. *Id*. at ¶20.  At all times, Plaintiffs' Counsel conducted their work with skill and efficiency, conserving resources and avoiding duplication of effort.  The foregoing unquestionably represents a substantial commitment of time, personnel, and out-of-pocket expenses by Plaintiffs' Counsel, while taking on the substantial risk of recovering nothing for their efforts.  The financial risk to Plaintiffs' Counsel was significant.  This factor thus supports the requested attorneys' fee award.

### 7.    The Fee Request Is Comparable to Awards in Similar Cases

The Third Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-the-fund method is used.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015).  The percentage requested here, 30%, is

well within that range and comparable percentages often have been awarded in the Third Circuit. *See*, *e.g.*, *In re Cigna-Am. Specialty Health Admin. Fee Litig*., No. 2:16-cv-03967-NIQA, 2019 WL 4082946, at *15 (E.D. Pa. Aug. 29, 2019) (approving fee award of one-third of settlement fund); *Huffman v. Prudential Ins. Co. of Am*., No. 2:10-CV-05135, 2019 WL 1499475, at *7 (E.D. Pa. Apr. 5, 2019) (explaining that the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions in the district); *Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16-6054, 2017 WL 2986300, at *6 (E.D. Pa. July 13, 2017) (approving common fund fee of 33%); *In re Merck & Co., Inc. Vytorin ERISA Litig*., No. 08-CV-285 (DMC), 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (approving common fund fee of 33 1/3%). Comparable percentages also have been awarded in other data breach litigation where the settlement fund often is calculated to include the value of injunctive relief obtained, which Plaintiffs do not seek to have taken into account here.  *See*, *e.g.*, *Target*, 2016 WL 2757692, at *2 (awarding approximately 30% of the total value of the settlement benefits); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., No. JKB-16-3025, 2019 WL 3183651, at *7 (D. Md. July 15, 2019) (awarding 30% of settlement fund); *In re Arby's Rest. Grp., Inc. Data Sec. Litig*., No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *2-4 (N.D. Ga. June 6, 2019) (same).

> **8.    The Settlement Benefits Are Attributable Solely to the Efforts of Plaintiffs' Counsel**

Plaintiffs' Counsel were the only ones investigating and pursuing the claims at issue in this Litigation on behalf of financial institutions, and they alone actively litigated the proceedings.  This factor thus supports the fee request.  *See Harshbarger*, 2017 WL 6525783, at *5 ("Because Class Counsel were the only ones pursuing the claims at issue in this case, this factor weighs in favor of approval.").

9. **The Percentage Fee Approximates the Fee that Would Have Been Negotiated in the Private Market**

Private contingency fee agreements customarily range between 30% and 40% of the recovery. *See Ocean Power*, 2016 WL 6778218, at *29 ("If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery."); *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) (same); *Ikon*, 194 F.R.D. at 194 (same). Here, Plaintiffs' Counsel's requested percentage of 30% is commensurate with customary percentages in private contingent fee agreements. Consequently, this factor also supports the requested fee.

10. **Innovative Terms of the Settlement**

The Settlement does not contain any innovative terms. This factor is thus neutral as it neither weighs in favor of nor against approval.

On balance, the *Gunter/Prudential* factors demonstrate that Plaintiffs' Counsel's requested fee is reasonable and, therefore, should be approved.

C. **The Lodestar Cross-Check Confirms the Fee Request Is Reasonable**

The Third Circuit has suggested that fees awarded under the percentage method be cross-checked against the lodestar. *See*, *e.g.*, *Gunter*, 223 F.3d at 195 n.1. The purpose of that cross-check is to ensure that the percentage approach does not result in an "extraordinary" lodestar multiple or a windfall. *See Cendant*, 264 F.3d at 285. The Third Circuit has stated that a lodestar crosscheck entails an abridged lodestar analysis that requires neither "mathematical precision nor bean-counting." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). The Court "need not" receive or "review actual billing records" when conducting this analysis. *Id.* at 307.

Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar"; *i.e.*, "the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455. A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community[,]" taking into account "'the experience and skill of the . . . attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

Plaintiffs' Counsel's combined "lodestar" is approximately $11.5 million for work through September 15, 2019, meaning that the requested fee, if awarded, would represent a "multiplier" of 1.3 of Plaintiffs' Counsel's combined lodestar. Joint Decl. ¶¶19-20. Plaintiffs' Counsel's lodestar represents nearly 22,000 hours of work at their current hourly rates.[9] *Id.* Plaintiffs' Counsel's rates range from $950 to $405 for partners and $600 to $300 for other attorneys. Lynch Decl. ¶5 & Ex. A; Scott Decl. ¶5 & Ex. A; Riebel Decl. ¶5 & Ex. A; Bleichner Decl. ¶5 & Ex. A; Gudmundson Decl. ¶5 & Ex. A; Murray Decl. ¶5 & Ex. A; Halbert Decl. ¶5 & Ex. A; Pizzirusso Decl. ¶5 & Ex. A; Van Horn Decl. ¶5 & Ex. A; Kudulis Decl. ¶5 & Ex. A. The reasonableness of Plaintiffs' Counsel's rates is supported by Plaintiffs' Counsel's declarations, which establish that the rates are the same as their standard hourly rates charged to paying clients on non-contingent matters and are in accord with the prevailing rates for class action and complex commercial litigation in the relevant

---

[9] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *33 n.28 (D.N.J. Oct. 1, 2013) (citing *Jenkins*, 491 U.S. at 283-88); *Ikon*, 194 F.R.D. at 195 ("attorney's hourly rates were appropriately calculated by reference to current rather than historic rates").

legal markets, where the principal attorneys are respectively located, and in consideration of the fact that all of Plaintiffs' Counsel maintain national practices. *Id.* These rates have been approved in other class action cases. Lynch Decl. ¶6; Scott Decl. ¶6; Riebel Decl. ¶6; Bleichner Decl. ¶6; Gudmundson Decl. ¶6; Murray Decl. ¶6; Halbert Decl. ¶6; Pizzirusso Decl. ¶6; Van Horn Decl. ¶6; Kudulis Decl. ¶6; *see also Morrow v. Ann, Inc*., No. 1:16-cv-03340, ECF Nos. 70-71, 94 (S.D.N.Y.) (approving Carlson Lynch and Scott+Scott's rates); *In re Vizio, Inc. Consumer Privacy Litig.*, No. 8:16-ml-02693, ECF Nos. 308-11, 308-16, 308-18, 308-19, 337 (C.D. Cal. Apr. 12, 2019) (approving Carlson Lynch, Murray Law, Scott+Scott, and Zimmerman Reed's rates). Further, Plaintiffs' Counsel's rates are within the ranges that have been approved by other district courts in this Circuit overseeing class settlements. *See Cigna-Am. Specialty*, 2019 WL 4082946, at *15 (approving hourly rates between $175 and $995); *Krimes v. JPMorgan Chase Bank, N.A*., No. 15-5087, 2017 WL 2262998, at *10 (E.D. Pa. May 24, 2017) (approving hourly rates ranging from $125 (for a paralegal) to $750 (for a senior partner)); *Viropharma*, 2016 WL 312108, at *18 (approving hourly rates ranging from $350 to $925); *Moore v. GMAC Mortg*., No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (approving hourly rates ranging from $325 to $860); *Merck & Co.*, 2010 WL 547613, at *13 (approving hourly rates ranging from $320 to $835). Given Plaintiffs' Counsel's experience, work, and the complex and relatively specialized nature of this Litigation, their rates are reasonable.

Plaintiffs' Counsel in this Litigation have submitted summaries of the number of hours expended by attorneys and staff and descriptions of the type of work each firm performed. Lynch Decl. ¶4 & Ex. A; Scott Decl. ¶4 & Ex. A; Riebel Decl. ¶4 & Ex. A; Bleichner Decl. ¶4 & Ex. A; Gudmundson Decl. ¶4 & Ex. A; Murray Decl. ¶4 & Ex. A; Halbert Decl. ¶4 & Ex. A; Pizzirusso Decl. ¶4 & Ex. A; Van Horn Decl. ¶4 & Ex. A; Kudulis Decl. ¶4 & Ex. A. The hours billed were

spent drafting pleadings and briefs, litigating numerous discovery disputes, taking and defending depositions, responding to discovery requests, producing documents, reviewing document productions, working with experts, and negotiating the Settlement.  *Id.*[10]  Class Counsel also collected from all Plaintiffs' Counsel detailed billing records and have reviewed such records to make sure they are: (1) consistent with the summaries provided; and (2) reflective of and consistent with the work performed in the case.  Joint Decl. ¶20.  The tasks performed are typical in litigation and were necessary to the successful prosecution and resolution of the claims against Wendy's.

The requested attorneys' fee of approximately $15 million represent a multiplier of 1.3 of Plaintiffs' Counsel's lodestar.  Courts often approve fees in class actions that correspond to multiples of one to four times lodestar.  *See*, *e.g.*, *Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, 2008 WL 906472, at *8 (M.D. Pa. Mar. 31, 2008) ("Lodestar multiples of less than four (4) are well within the range awarded by district courts in the Third Circuit."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("'[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied'" (alteration in original)).  Given the quality of Plaintiffs' Counsel's work and results achieved in these circumstances, the lodestar comparison supports the reasonableness of the requested fee award.

---

[10]    Moreover, additional work will be required of Class Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the Final Approval Hearing; supervision of the Claims Administration process conducted by the Settlement Administrator; and supervision of the distribution of the Settlement Fund to Settlement Class Members who have submitted valid Claim Forms.  However, Class Counsel will not seek payment for this additional work.  Plaintiffs' Counsel are able to provide itemized billing records setting forth time spent on particular tasks if the Court so requests.

**D.      Plaintiffs' Counsel's Request for Reimbursement of Expenses Is Reasonable**

"'Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.'" *Ocean Power*, 2016 WL 6778218, at *29.  Plaintiffs' Counsel seek reimbursement of $347,284.15 for the reasonable expenses incurred to advance this Litigation.   Joint Decl. ¶19.   Plaintiffs' Counsel have scrupulously documented their expenses, by category, in their respective accompanying declarations.  Lynch Decl. ¶¶3, 8 & Ex. B; Scott Decl. ¶¶3, 8 & Ex. B; Riebel Decl. ¶¶3, 8 & Ex. B; Bleichner Decl. ¶¶3, 8 & Ex. B; Gudmundson Decl. ¶¶3, 8 & Ex. B; Murray Decl. ¶¶3, 8 & Ex. B; Halbert Decl. ¶¶3, 8 & Ex. B; Pizzirusso Decl. ¶¶3,8 & Ex. B; Van Horn Decl. ¶¶3, 8 & Ex. B.  The schedule of expenses shows that Plaintiffs' Counsel litigated the case efficiently, with no unreasonable or unjustified expenditures.  *Id.*  Moreover, the expenditures were of the type typically charged to hourly paying clients.  *Id.*

As explained in the Joint Declaration, a vast amount of fact discovery was taken in this Litigation and experts were engaged to consult on liability and develop a classwide damages model in preparation for the filing of motions for class certification and summary judgment and to facilitate the mediation process.    Joint Decl.  ¶6.   Thus, e-discovery vendor fees represent approximately 48% of the expenses incurred, travel expenses to attend depositions, mediations, and hearings represent approximately 22%, and expert fees represent approximately 10%.  *Id.* ¶21. The remainder of the expenses include online legal and factual research, mediators' fees, court reporting fees, transcript costs, postage, and photocopying.  *Id.*  Such categories of expenses are commonly reimbursed in common fund cases.  *See In re Wilmington Tr. Sec. Litig*., No. 10-cv-0990-ER, 2018 WL 6046452, at *10 (D. Del. Nov. 19, 2018) (approving expenses related to management of documents, expert fees, computerized research, photocopying, transcripts, postage, travel, and discovery expenses); *Ocean Power*, 2016 WL 6778218, at *29 (approving

expenses for costs of plaintiff's private investigator, photocopying, postage, messengers, filing fees, travel, long distance telephone, telecopier, mediation fees, and the fees and expenses of plaintiff's damages expert).  In sum, all of Plaintiffs' Counsel's expenses, in an aggregate amount of $347,284.15, are typical in litigation, were necessary to the successful prosecution and resolution of the claims against Wendy's, and should be approved.

**E.    The Requested Service Awards Are Reasonable**

The purpose of service awards is to compensate named plaintiffs for the services they provided, risks they incurred during the course of a class action, and to reward their public service for contributing to the enforcement of the law.  *See Sullivan*, 667 F.3d at 333 n.65; *see also* Annotated Manual for Complex Litigation §21.62 n.971 (4th ed. 2019) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").

The Agreement permits Plaintiffs to seek Service Awards of $7,500 to each of the 15 Financial Institution Plaintiffs that were deposed and $2,500 to each of the three Financial Institution Plaintiffs that served as named plaintiffs in this Litigation, but were not deposed, or a total of $120,000, to compensate them their efforts in this Litigation and commitment on behalf of the Settlement Class.  SA ¶66.  Any Service Awards approved by the Court will be paid from the Settlement Fund.  *Id*.  Financial Institution Plaintiffs responded to numerous document requests, reviewed the complaints and certain briefs, and participated in the settlement discussions that resulted in the excellent recovery to the Settlement Class.  Joint Decl. ¶¶5-6, 8, 17.  Financial Institution Plaintiffs' employees were highly cooperative in making themselves available for document production and/or deposition testimony.  *Id.* ¶17.  Additionally, Financial Institution Plaintiffs actively communicated with Plaintiffs' Counsel for purposes of advising and consulting with regard to the consequences of the Data Breach and the resulting damages.  *Id.*  These

communications were crucial to the development of a workable damage model to facilitate the mediation process.  *Id.*  Other courts in this Circuit have routinely approved service awards in amounts higher than those requested for each Financial Institution Plaintiff here.  *See Wilmington*, 2018 WL 6046452, at *10 (approving service awards of greater than $7,500 to institutional fund plaintiffs whose employees were active in the litigation); *Brown*, 2017 WL 2986300, at *7 (awarding $10,000 to each named plaintiff because they "were actively involved in the litigation since before it was commenced, they provided the information and documents that formed the basis for the lawsuit, . . . and because the service award payments represent a small fraction of the $542,586 Settlement Fund"); *Barel v. Bank of Am.*, 255 F.R.D. 393, 403 (E.D. Pa. 2009) ($10,000 award to each class representative); *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at *24 (D.N.J. Apr. 8, 2011) (same).  Thus, the requested Service Awards should be approved.

## III.  CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion for an award of 30% of the Settlement Fund (including interest earned thereon) as attorneys' fees, $347,284.15 as reimbursement of litigation expenses, and $120,000 as Service Awards for Financial Institution Plaintiffs.

Dated:  October 7, 2019

| | |
|---|---|
| **CARLSON LYNCH LLP** | **SCOTT+SCOTT**<br>**ATTORNEYS AT LAW LLP** |
|  */s/ Gary F. Lynch*              |  */s/ Erin Green Comite*              |
| Gary F. Lynch | Erin Green Comite (*pro hac vice*) |
| Jamisen A. Etzel | Joseph P. Guglielmo (*pro hac vice*) |
| 1133 Penn Avenue, 5th Floor | 156 South Main Street |
| Pittsburgh, PA 15222 | P.O. Box 192 |
| Telephone:  412-322-9243 | Colchester, CT 06415 |
| Facsimile:  412-231-0246 | Telephone: (860) 537-5537 |
| glynch@carlsonlynch.com | Facsimile: (860) 537-4432 |

jetzel@carlsonlynch.com                    ecomite@scott-scott.com
                                           jguglielmo@scott-scott.com

*Co-lead Counsel and Proposed Class Counsel*

19

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Gary F. Lynch*

Gary F. Lynch
